The order of the district court will be affirmed.

---

**DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR, Petitioner,**

v.

**William SIWIEC, Respondent.**

No. 89–3334.

United States Court of Appeals, Third Circuit.

Argued Dec. 11, 1989.

Decided Jan. 26, 1990.

---

Robert E. Kirschman, Jr. (argued) and Sylvia T. Kaser, U.S. Dept. of Labor, Office of the Sol., Washington, D.C., for petitioner.

Jess Leventhal (argued), Langhorne, Pa., for respondent.

Before HUTCHINSON, COWEN and ROSENN, Circuit Judges.

OPINION OF THE COURT

COWEN, Circuit Judge.

The Director of the Office of Workers' Compensation Programs, United States Department of Labor ("Director") petitions for review of a final order of the Benefits Review Board ("Board") granting an award of black lung benefits to William Siwiec ("Siwiec") under the Black Lung Benefits Act, 30 U.S.C. §§ 901–45 (1982). The Board affirmed an Administrative Law Judge's ("ALJ") order granting benefits. We hold that because the Board failed to properly exercise its scope of review function when affirming the ALJ's finding that total disability was established, we will grant the Director's petition for review and reverse the decision of the Board.

I.

William Siwiec worked as a coal miner for eight years. His duties as a miner consisted of operating a jackhammer, air compressor, grease gun and shoveling coal ending in 1952. After working as a coal miner, Siwiec went to work for U.S. Steel Corporation. Siwiec then worked for U.S. Steel Corporation for thirty-two years until his retirement in 1985. After retiring, Siwiec filed a claim for benefits pursuant to the Black Lung Benefits Act (the "Act") 30 U.S.C. §§ 901–45 (1982), claiming that as a result of his coal mining experience he is suffering from pneumoconiosis. His claim for benefits was denied by the Department of Labor's Office of Workers' Compensa-

tion Programs and Siwiec thereafter requested a formal hearing. His case was referred to the Office of Administrative Law Judges and a formal hearing was held.

Benefits under the Act are awarded to persons who are totally disabled due to pneumoconiosis arising out of coal mine employment. 30 U.S.C. § 901(a) (1982). Under Part 718 of the black lung regulations, a miner must prove that he has pneumoconiosis, that he contracted it through coal mine employment, and that his disability arose out of such employment. *See* 20 C.F.R. §§ 718.201–.203 (1987). Section 718.204 sets out the specific criteria for determining whether a miner is totally disabled.[1] Section 718.204(c) provides that evidence which meets the standards of either paragraphs (c)(1), (2), (3), (4) or (5) establishes total disability in the absence of contrary probative evidence. Section 718.-204(c)(1) provides for total disability when pulmonary function tests show values equal to or less than listed in the applicable Table in Appendix B. Paragraph 718.-204(c)(4) specifies that an ALJ may find total disability if a physician "exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques concludes that a miner's respiratory or pulmonary conditions prevents or prevented the miner from engaging in employment" as defined by subsection (b).

In addition, Subpart B of the black lung regulations, 20 C.F.R. §§ 718.101–.107 (1987) sets out quality standards for different kinds of medical evidence, including x-rays, pulmonary function studies, arterial blood gas studies, autopsies and biopsies that may be used to establish total disability. These quality standards were established to insure that any medical evidence in regard to a black lung claim could be independently reviewed by a physician to determine whether they were properly performed and were thus reliable. *See Zeigler Coal Co. v. Seiberg,* 839 F.2d 1280, 1283 (7th Cir.1988) ("the black lung regulations require tracings of each pft [pulmonary function test] for the very purpose of permitting independent verification of the test results"). Section 718.103 provides the standard for pulmonary function tests.[2] It requires that a pulmonary function study must contain a statement as to a claimant's ability to follow directions and his degree of cooperation in performing the test. 20 C.F.R. § 718.103(b)(5). All such studies must also be accompanied by three tracings of each pulmonary function test performed.[3] 20 C.F.R. § 718.103(b).[4]

At the hearing, the ALJ determined that Siwiec established both the existence of pneumoconiosis and the causal relationship between the pneumoconiosis and his coal mine employment. The ALJ further found

---

**1.** Section 718.204(b) contains the criteria and definition of total disability. Section 718.204(b) provides that a miner shall be considered totally disabled if pneumoconiosis prevents or prevented the miner from a) performing his usual coal mine work, or b) from engaging in gainful employment in the immediate area of his residence.

**2.** A "conforming" pulmonary function study complies with the quality standards set forth in 20 C.F.R. § 718.103, Part 718, Appendix B. A "non-conforming" study does not comply with these standards.

**3.** Tracings are the physical paper record of the results of a pulmonary function study which are manifested in a series of lines on graph paper.

**4.** Section 718.103 states, in relevant part, that:

(a) Any report of pulmonary function tests submitted in connection with a claim for benefits.... shall be administered and reported

in accordance with the standards for the administration and interpretation of pulmonary function tests as described in Appendix B. (b) All pulmonary function test results submitted in connection with a claim for benefits shall be accompanied by three tracings of each test performed.... Pulmonary function test results submitted in connection with a claim for benefits shall also include a statement signed by the physician or technician conducting the test setting forth the following:

....

(5) Claimant's ability to understand the instructions, ability to follow directions and degree of cooperation in performing the tests....

....

(c) No results of pulmonary function tests shall constitute evidence of a respiratory or pulmonary impairment unless such tests are conducted and reported in substantial compliance with this section and Appendix B.

20 C.F.R. § 718.103 (1987).

that Siwiec was totally disabled pursuant to Section 718.204(c)(1) and (c)(4) and awarded him benefits. The medical evidence consisted of six pulmonary function studies and three medical reports. In reaching his decision, the ALJ relied on four of the pulmonary evidence studies combined with the medical report of Dr. Marcella Frank, Siwiec's treating physician.

Two pulmonary function studies were performed by Dr. Alan T. Levitt on July 29, 1985 and on August 4, 1985. These studies resulted in qualifying values,[5] but did not include a statement on Siwiec's comprehension and cooperation nor were they accompanied with tracings. App. at 39–41. Two studies were also prepared by Dr. Frank on June 24, 1986 and on November 19, 1986. These tests also resulted in qualifying values, but included neither a statement as to Siwiec's comprehension and cooperation, nor the accompanying tracings. App. at 44–50. The other pulmonary function studies were performed by Drs. Snyder and Obaray and resulted in non-qualifying values. App. at 22–28, 32, 42–43. Dr. Frank's medical report of June 20, 1986 evaluated the pulmonary function study results, and stated that "[t]hese numbers are strongly suggestive of severe restrictive abnormality in the lungs." App. at 34. Dr. Frank also stated that Siwiec "meets [the] disability criteria in that his pulmonary function studies are severely abnormal." *Id.* The results of the pulmonary function studies were again discussed in a supplemental medical report on December 1, 1986. App. at 37–38.

Although neither a statement of Siwiec's comprehension and cooperation nor tracings were attached to the pulmonary function studies prepared by Drs. Levitt and Frank, the ALJ nevertheless held that "the pulmonary function study evidence combined with the opinion of the claimant's treating physician, Dr. Frank, that the claimant is totally disabled is sufficient to

outweigh the contrary evidence in the record." App. at 15. The ALJ credited Dr. Frank's medical opinion because she was Siwiec's treating physician and because the medical evidence submitted by Dr. Frank to the ALJ was the most recent evidence of record. *Id.*

The Director appealed to the Board pursuant to 20 C.F.R. §§ 802.205, 802.211 (1987). The Board affirmed the ALJ's award of benefits. *Siwiec v. Director, OWCP,* No. 87–1434 BLA (Ben.Rev.Bd. March 22, 1989). In affirming Siwiec's claim for benefits, the Board held that the ALJ's decision complied with this Court's holding in *Director, OWCP v. Mangifest,* 826 F.2d 1318 (3d Cir.1987), that an "administrative law judge must consider whether a pulmonary function study is in substantial compliance with the quality standards of 20 C.F.R. § 718.103 in order to find total disability demonstrated pursuant to Section 718.204(c)(1)." App. at 6. The Board held specifically that:

> [T]he administrative law judge did consider the quality standards of Section 718.103. The administrative law judge specifically determined that "the tracings were not attached and the claimant's comprehension and cooperation were not noted for a number of the pulmonary function studies," but nevertheless concluded that these studies would not be precluded from consideration because, the administrative law judge stated, while an administrative law judge may consider the quality standards found in Section 718.103, the standards are not mandatory and pulmonary function studies cannot be precluded from consideration by the administrative law judge under Section 718.204(c)(1) simply because the evidence fails to comply with those standards. Decision and Order at 6. The administrative law judge cited *Gorman v. Hawk Contracting, Inc.,* 9 BLR 1–76, 1–78 (1986) in support of this conclusion. Decision and Order at 6.

---

**5.** A "qualifying" pulmonary function study yields values that are equal to or less than the values set out in the tables at 20 C.F.R. Part 718, appendices B and C. Such a study is evidence of a totally disabling respiratory condition. A "non-qualifying" study exceeds those values in the tables and thus is insufficient to establish total disability. *See* 20 C.F.R. § 718.204(c)(1)(2).

Contrary to the Director's contention that *Mangifest, supra,* directly overrules *Gorman, supra,* by holding that compliance with the quality standards is mandatory in order for a pulmonary function study to be considered by the administrative law judge, *Mangifest* simply requires the administrative law judge to expressly consider the quality standards. Inasmuch as the administrative law judge considered the quality standards and provided a rational basis for crediting the four pulmonary function studies, even though they were non-conforming, we affirm the administrative law judge's finding that claimant has demonstrated total disability pursuant to Section 718.-204(c)(1).

App. at 6. The Board also held in finding total disability, the ALJ considered Dr. Frank's reliance on the non-conforming pulmonary function studies when he credited her opinion as probative evidence. App. at 7. This appeal followed. We have jurisdiction under Section 21(c) of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 921(c), as incorporated by Section 422(a) of the Black Lung Benefits Act, 30 U.S.C. § 932(a).

## II.

We have consistently held that "this Court is to review the decisions of the Benefits Review Board for errors of law, and to make certain that the [Board has] adhered to its scope of review provision." *Sun Shipbuilding & Dry Dock Co. v. McCabe,* 593 F.2d 234, 237 (3d Cir.1979); *Clites v. Jones and Laughlin Steel Corp.,* 663 F.2d 14, 15 (3d Cir.1981). The Board's function is limited to reviewing the ALJ's decision for errors of law and to determine whether the factual findings are supported by substantial evidence in the record. 33 U.S.C. § 921(b)(3); 20 C.F.R. § 802.301. "In order to determine whether the Board has properly adhered to its scope of review ... [we] must make an independent review of the record and decide whether the ALJ's findings are supported by substantial evidence." *McCabe,* 593 F.2d at 237.

## III.

On appeal to this Court, the Director argues that the ALJ erred when he credited four qualifying, yet non-conforming, pulmonary function studies in order to find total disability pursuant to Section 718.-204(c)(1). We have previously held that an ALJ must consider whether a pulmonary function study is in substantial compliance with the quality standards of 20 C.F.R. § 718.103. *Director, OWCP v. Mangifest,* 826 F.2d 1318, 1326 (3d Cir.1987); 20 C.F.R. § 718.103(c). We also acknowledged in *Mangifest* that "[a] medical test administered incorrectly may very well be completely unreliable." *Id.* at 1327. An ALJ must determine whether the test results meet the quality standards and whether the medical evidence is reliable to prove that the claimant is totally disabled. *Id.* at 1319. The Benefits Review Board has consistently held that pulmonary function studies that fail to meet quality standards and are therefore non-conforming cannot establish total disability. *Andrini v. Director, OWCP,* 5 BLR 1–844, 1–846 (1983); *SGRO v. Rochester & Pittsburgh Coal Co.,* 4 BLR 1–370, 1–375 (1981).

In reaching his conclusion, the ALJ gave more evidentiary weight to the four qualifying, non-conforming pulmonary function studies, than to the non-qualifying studies in finding total disability. In support of his decision, the ALJ held that "these [qualifying] studies will not be precluded from consideration in light of the Benefit Review Board's holding that the standards in § 718.103 are not mandatory. *Gorman v. Hawk Contracting Inc.,* 9 BLR 1–76 (1986)." App. at 14.

As previously discussed, the record reveals that tracings and some statements of cooperation and comprehension were not included with Siwiec's test results. App. at 13. We agree with the Director that the ALJ erred in holding that the quality standards of Section 718.103 are not mandatory and that such pulmonary function studies which do not substantially conform to those standards may establish total disabili-

ty. Director's Brief at 9.[6] The record indicates that the ALJ failed to place any significance in regard to the pulmonary function studies to determine whether they were insufficient before crediting them as probative evidence. The ALJ based his decision on unreliable medical evidence. Since the pulmonary function studies had no evidentiary value, it should not have been credited as probative evidence in establishing total disability pursuant to Section 718.204(c)(1). *See Director, OWCP v. Congleton,* 743 F.2d 428, 431 n. 3 (6th Cir.1984).

The Board in its opinion, held that *"Mangifest* simply requires the administrative law judge to expressly consider the quality standards[,]" and concluded that mere reference to the quality standards satisfies the substantial compliance requirement in *Mangifest.* However, *Mangifest* requires that "the ALJ ... make benefit decisions 'in accordance with' the quality standards." *Mangifest,* 826 F.2d at 1325. "The quality standards for ventilatory studies ... provide explicitly that non-qualifying test results shall not constitute evidence unless they are in substantial compliance with the standards." 20 C.F.R. § 718.103(c); *Twin Pines Coal Co. v. United States Dep't of Labor,* 854 F.2d 1212, 1217 n. 5 (10th Cir. 1988).

The ALJ did not make any findings as to whether the pulmonary function studies were in "substantial compliance" with the quality standards in Section 718.103. The sole reference the ALJ made with respect to the quality standards, was his reliance on the Benefit Review Board's decision in *Gorman.* The Board's holding that the ALJ's reliance in this case on the Board's earlier decision in *Gorman* constitutes a "rational basis for crediting four pulmonary function studies," is contrary to the rule espoused in *Mangifest* and to the plain language in Section 718.103(c). The rule in *Mangifest* requires more than merely referring to the quality standards. The Board erred in affirming the ALJ's finding that total disability was established pursuant to Section 718.204(c)(1).

The Director argues further that the ALJ also erred in finding that Siwiec had demonstrated total disability pursuant to Section 718.204(c)(4) when he credited Dr. Frank's medical opinion as probative evidence. In finding total disability, an ALJ should set out and discuss the pertinent medical evidence presented. *See Director, OWCP v. Rowe,* 710 F.2d 251, 154 (6th Cir.1983). The ALJ "is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences." *Markus v. Old Ben Coal Co.,* 712 F.2d 322, 326 (7th Cir. 1983).

Moreover, we previously held that "an ALJ may find a miner totally disabled in reliance upon a medical judgment in a non-complying report so long as the judgment is reasoned and based on medically acceptable evidence as required by § 718.204(c)(4)." *Mangifest,* 826 F.2d at 1319. "The mere fact that an opinion is asserted to be based upon medical studies cannot by itself establish as a matter of law that it is documented and reasoned. Rather, that determination requires the factfinder to examine the validity of the reasoning of a medical opinion in light of the studies conducted and the objective indications upon which the medical opinion or conclusion is based." *Rowe,* 710 F.2d at 255.

We conclude that Dr. Frank's medical report does not constitute a well reasoned medical judgment because her report was based upon unreliable medical evidence. Dr. Frank's conclusions regarding total disability were based entirely on pulmonary function evidence that did not comply with the quality standards. *See supra* at 637–638. This alone undermines the reliability of Dr. Frank's medical report which should not have been considered by the ALJ to determine Siwiec's claim for disability benefits. *See Hutchens v. Director, OWCP,* 8 BLR 1–16, 1–19 (1985); *Arnoni v. Director, OWCP,* 6 BLR 1–423, 1–426 (1983),

---

**6.** At the time of his decision, the ALJ was relying on the Benefit Review Board's decision in *Gorman* and did not have the benefit of our decision in *Mangifest.* Our decision in *Mangifest* was rendered following the decision by the ALJ but prior to the Board's decision.

*aff'd,* 738 F.2d 420 (3d Cir.1984). The ALJ erred when he credited Dr. Frank's report as probative evidence without considering Dr. Frank's reliance on the non-conforming studies. *See Markus,* 712 F.2d at 326.

Since the record indicates no other medical evidence which might demonstrate total disability, and the fact that the ALJ relied on non-conforming medical evidence to establish disability, we hold that the "ALJ's findings ... [were not] supported by substantial evidence." *McCabe,* 593 F.2d at 237.

### IV.

The Director's petition for review will be granted, the decision of the Board will be reversed, and the matter remanded back to the Board with directions to dismiss the claim petition.