932 F.2d 969
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Arthur MUNCY, Petitioner,
v.
DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED
STATES DEPARTMENT OF LABOR, Respondent.
 No. 90-3568.
 United States Court of Appeals, Sixth Circuit.
 May 2, 1991.
 
 Before NATHANIEL R. JONES and DAVID A. NELSON, Circuit Judges, and MILES, Senior District Judge.*
 PER CURIAM.
 
 
 1
 Petitioner Arthur Muncy appeals the Benefits Review Board's denial of his petition for black lung benefits. For the following reasons, we affirm.
 
 I.
 
 2
 Arthur Muncy, a fifty-two year old male, claimed in his application for black lung benefits that he had worked as an underground coal miner for about nine years. Muncy last worked as a coal miner around 1965.
 
 
 3
 The earliest physical examination of record was performed in 1956, in connection with Muncy's military service. With respect to Muncy's lungs, the 1956 report noted " 'inspiratory rales in both lung bases which disappeared somewhat with coughing.' " J.App. at 13. The diagnosis was probable grand mal epilepsy.
 
 
 4
 The first examination conducted in connection with the black lung claim was performed by Dr. Cordell Williams, on April 3, 1986, at the request of the Department of Labor. Based upon a physical examination, chest X-ray and diagnostic tests, Dr. Williams diagnosed epilepsy and pneumoconiosis. Dr. Williams related Muncy's pneumoconiosis to his coal mine employment. On the issue of disability, Dr. Williams stated that Muncy had no pulmonary impairment and was capable of doing coal mine work.
 
 
 5
 Dr. Charles Moore examined Muncy in August and October of 1986 and submitted two reports. Based upon physical examinations and the diagnostic tests performed by Dr. Williams, Dr. Moore concluded that Muncy " 'has very minimal pneumoconiosis.' " J.App. at 13. Dr. Moore did not address the issue of disability in his 1986 report. In a supplemental report dated May 22, 1987, however, Dr. Moore stated that based upon new chest X-ray and a blood gas study, Muncy had pneumoconiosis, " 'which is causing [him] marked respiratory problems.' " Id. at 14.
 
 
 6
 Muncy's most recent examination was performed by Dr. Glen Baker on September 3, 1987. Based upon a physical examination, a pulmonary function test and a blood gas study, Dr. Baker concluded that Muncy suffered from pneumoconiosis with "mild to moderate obstructive ventilatory defect with a mild degree of restriction." Id. at 14. On January 28, 1988, Dr. Baker submitted a letter supplementing his report. The supplemental letter stated in its entirety:
 
 
 7
 Mr. Muncy's pulmonary function studies meet the federal requirements to be considered permanently disabled due to occupational pneumoconiosis and pulmonary disease. This, in association with the presence of pneumoconiosis on his x-rays, make him totally and permanently disabled do [sic] do any type of mining employment.
 
 
 8
 Id. at 19.
 
 
 9
 On February 17, 1988, the pulmonary function test performed by Dr. Baker was subsequently invalidated by Dr. Steve Kraman, a Department of Labor physician, due to Muncy's "less than optimal effort, cooperation, comprehension, and variable effort." Id. at 13. Arthur Muncy filed an application for benefits under the Black Lung Benefits Act, as amended, 30 U.S.C. Secs. 901 et seq., on March 4, 1986. The Department of Labor denied the claim and referred the case to the Office of Administrative Law Judges for a formal hearing. The ALJ conducted a hearing on March 29, 1988. On October 21, 1988, the ALJ issued a decision and order denying benefits. Muncy appealed the ALJ's decision to the Benefits Review Board. The Board affirmed the ALJ's decision. This appeal followed.
 
 II.
 
 10
 The ALJ's findings of fact must be upheld if supported by substantial evidence. Engle v. Director, Office of Workers' Compensation, 792 F.2d 63, 64 (6th Cir.1986). Substantial evidence is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " Richardson v. Perales, 402 U.S. 389, 401 (1971).
 
 
 11
 In order to establish entitlement to black lung benefits under 20 C.F.R. Sec. 727.203(a), one must show, among other things, that the claimant was a miner "engaged in coal mine employment for at least 10 years[.]" 20 C.F.R. Sec. 727.203(a) (1990). The ALJ found that Muncy established "no more than a total of 4 years of coal mine employment." J.App. at 11. However, "[w]here eligibility is not established under [Part 727] such eligibility may be established under Part 718[.]" 20 C.F.R. Sec. 727.203(d) (1990). See also Couch v. Director, OWCP, 893 F.2d 130, 131 (6th Cir.1990) (citing Knuckles v. Director, OWCP, 869 F.2d 996 (6th Cir.1989)).
 
 
 12
 In order to establish entitlement to black lung benefits under Part 718 regulations, a claimant must prove three facts: (1) that he suffers from pneumoconiosis; (2) that his pneumoconiosis arose out of his coal mine employment; and (3) that he is totally disabled by pneumoconiosis. Adams v. Director, OWCP, 886 F.2d 818, 820 (6th Cir.1989).
 
 
 13
 The ALJ found that Muncy suffers from pneumoconiosis and thus the first prong of Part 718 was satisfied. J.App. at 12. The next prong is whether Muncy's pneumoconiosis arose out of his coal employment. When, as here, a miner has less than ten years of coal mine employment, Sec. 718.203(c) requires "competent evidence" to establish the relationship between pneumoconiosis and coal mine employment. Each of the three doctors that examined Muncy diagnosed pneumoconiosis. Neither Dr. Moore nor Dr. Baker, however, reported whether Muncy's pneumoconiosis was related to coal mine employment. Dr. Williams, on the otherhand, did state that Muncy had " 'an occupational lung disease which was caused by his coal mine employment.' " J.App. at 12. The ALJ found that Dr. Williams' medical opinion coupled with Muncy's testimony established " 'a connection between coal mine employment and pneumoconiosis for purposes of Section 718.203(c).' " Id. Thus, prong two of Part 718 was also established.
 
 
 14
 The third and final prong of Part 718 is that the claimant must show that he is totally disabled by pneumoconiosis. 20 C.F.R. Sec. 718.204(a) (1990). The criteria for establishing total disability from pneumoconiosis are set forth in 20 C.F.R. Sec. 718.204(c). Section 718.204(c)(2) states that total disability may be established by arterial blood-gas tests which show certain values. As the results of the three blood gas studies in the record were not sufficient to establish disability in accordance with Appendix C to Part 718, the ALJ's determination that Muncy could not rely on Sec. 718.204(c)(2) is supported by substantial evidence. In addition, Muncy presented no evidence of "cor pulmonale with right sided congestive heart failure" and thus Sec. 718.204(c)(3) is inapplicable.
 
 
 15
 Section 718.204(c)(4) allows one to establish total disability from pneumoconiosis
 
 
 16
 if a physician exercising reasoned medical judgment, based on medically acceptable clinical and laboratory diagnostic techniques, concludes that a miner's respiratory or pulmonary condition prevents or prevented the miner from engaging in [his usual coal mine employment or some employment requiring his coal mining skills].
 
 
 17
 After "evaluating and weighing" the medical opinions of Drs. Baker, Moore and Williams, the ALJ concluded that "they do not establish total disability due to pneumoconiosis under Section 718.204(c)(4)." J.App. at 14. As this finding by the ALJ was made after properly weighing each of the medical reports before him and is based thereon, we find it supported by substantial evidence.
 
 
 18
 Finally, Sec. 718.204(c)(1) states that a claimant may establish total disability from pneumoconiosis by qualifying pulmonary function tests. Muncy relies upon the pulmonary function tests performed by Dr. Baker.[2] The results of Dr. Baker's tests produced an FVC of 2.77, an FEV of 1.79 and an MVV of 61 and thus were qualifying.[3] Petitioner's Brief at 4. Dr. Baker's report is silent on Muncy's degree of effort, cooperation, and understanding with respect to his pulmonary function study. However, Muncy's effort and cooperation were not noted in Dr. Baker's report. J.App. at 13.
 
 
 19
 20 C.F.R. Sec. 718.103 requires in part that
 
 
 20
 (b) [p]ulmonary function test results ... shall ... include a statement signed by the physician or technician conducting the test setting forth the following:
 
 
 21
 .............................................................
 
 
 22
 ...................
 
 
 23
 * * *
 
 
 24
 (5) Claimant's ability to understand the instructions, ability to follow directions and degree of cooperation in performing the tests ...
 
 
 25
 Further, Part 718 Appendix B(2)(iii)(A) states that if a claimant does not perform the tests with maximal effort it shall be "judged unacceptable." As noted earlier, Dr. Kraman invalidated Dr. Baker's study because "it was not acceptable due to less than optimal effort, cooperation, comprehension, and variable effort." The ALJ determined that "Since the ... pulmonary function study had no statement of effort and comprehension, and the only reviewing physician found it unacceptable, I find it does not establish total disability under Section 718.204(c)(1)." J.App. at 13.
 
 
 26
 Muncy contends that the ALJ's determination that he did not establish total disability under Sec. 718.204(c)(1)(ii) was erroneously made without consideration of Dr. Baker's supplemental letter. The Director concedes that the ALJ failed to "explicitly address[ ]" Dr. Baker's supplemental letter. We conclude that the ALJ's failure to explicitly comment upon the supplemental letter was harmless because the supplemental letter was submitted before Dr. Baker's report was invalidated and because the letter did not cure the defects found by the ALJ in Dr. Baker's report. Dr. Baker's supplemental letter only stated that the tests were valid and did not address specifically the issue of Muncy's effort, cooperation, comprehension or variable effort during the tests. The letter only stated that the tests were valid.
 
 
 27
 Therefore, we find that the ALJ's finding that Muncy failed to establish total disability under Sec. 718.204(c)(1)(ii) supported by substantial evidence.
 
 III.
 
 28
 In light of Dr. Kraman's invalidation and the ALJ's finding, Dr. Baker's report, with respect to the pulmonary function tests, can be viewed as qualifying but non-conforming.[4] Muncy contends that the ALJ's failure to consider Dr. Baker's supplemental letter precluded Muncy from having his claim fairly considered under 20 C.F.R. Sec. 718.204(c)(4). The Director asserts that because the supplemental letter failed to cure the defective tests, these tests cannot be relied upon to establish total disability under Sec. 718.204(c)(4). In sum, the issue is whether non-conforming evidence may be used to find total disability under Sec. 718.204(c)(4).
 
 
 29
 Citing Gorman v. Hawk Contracting, Inc., 9 BLR 1-76 (1986) and Budash v. Bethlehem Miners Corp., 13 BLR 1-46 (1986), Muncy contends that it is the position of the Benefits Review Board that evidence which is insufficient to support a finding of total disability under Sec. 718.204(c)(1) may nonetheless be the basis of a well-reasoned medical opinion under Sec. 718.204(c)(4). These cases do stand for that proposition.
 
 
 30
 In Budash, the Board held that medical evidence which did not satisfy the quality standards of Sec. 718.104 may still be used to establish total disability under Sec. 718.204(c)(4). The Board concluded that
 
 
 31
 the quality standards found at 20 C.F.R. Sec. 718.104 are not mandatory for medical evidence considered by the [alj] since Section 718.104 is inconsistent with the underlying statutory and regulatory schemes. While an [alj] may consider the quality standards found in Section 718.104, we hold that medical evidence cannot be precluded from consideration by the [alj] simply because the medical evidence fails to comply with these quality standards.
 
 
 32
 Budash, 13 BLR at 1-49. The Board stated that the criteria found in Subpart B of Part 718, such as Sec. 718.104, is to be used by the Office of Workers' Compensation
 
 
 33
 'to develop the medical evidence necessary for a determination with respect to each claimant's entitlement to benefits.' 20 C.F.R. Sec. 718.101 (emphasis added). Section 718.104 directly conflicts with the language of 20 C.F.R. 718.204(c)(4) which is found in Subpart C. Thus, we must construe Section 718.104 as solely delineating the internal policy guiding the Deputy Commissioner in developing its medical evidence[.]
 
 
 34
 Id. In Gorman, the Board extended the rationale of Budash to pulmonary function studies. 9 BLR at 1-78.
 
 
 35
 Moreover, the Third Circuit Court of Appeals has stated that " 'an ALJ may find a miner totally disabled in reliance upon a medical judgment in a [non-conforming] report so long as the judgment is reasoned and based on medically acceptable evidence as required by Sec. 718.204(c)(4).' " Director, OWCP v. Siwiec, 894 F.2d 635, 639 (3d Cir.1990) (citation omitted). The Siwiec court stated, however, that
 
 
 36
 'The mere fact that an opinion is asserted to be based upon medical studies cannot by itself establish as a matter of law that it is documented and reasoned. Rather, that determination requires the factfinder to examine the validity of the reasoning of a medical opinion in light of the studies conducted and the objective indications upon which the medical opinion or conclusion is based.'
 
 
 37
 Id. at 639 (quoting Director, OWCP v. Rowe, 710 F.2d 251, 255 (6th Cir.1983)). The court then concluded that the "medical report does not constitute a well reasoned medical judgment because [it] was based upon unreliable medical evidence." Id. The court reached this conclusion because the medical judgment rested solely upon non-conforming pulmonary function evidence. See id.
 
 
 38
 Section 718.204(c)(4) may be used to establish total disability
 
 
 39
 Where total disability cannot be established under paragraphs (c)(1), (c)(2) or (c)(3) of this section, or where pulmonary function tests and/or blood-gas studies are medically contra-indicated....
 
 
 40
 One may not be able to establish total disability under paragraph (c)(1) for reasons other than the non-conformity of the pulmonary function tests. For instance, it may be because the pulmonary function tests were non-qualifying or because the pulmonary function tests were medically contra-indicated although the tests were performed in compliance with the quality standards. Thus, although Sec. 718.204(c)(4) may be construed to mean that total disability may be established under Sec. 718.204(c)(4) by reliance upon non-conforming pulmonary function tests, such a reading is probably not compelled by this section.
 
 
 41
 Assuming that a non-conforming report may be used to establish total disability under Sec. 718.204(c)(4), the report must be sound, reasoned medical judgment based upon medically acceptable evidence. When, as here, however, a doctor's report, coupled with a supplemental letter, is based almost entirely on pulmonary function evidence that does not comply with the quality standards, such report does not constitute a well reasoned medical judgment. Siwiec, 894 F.2d at 639 (doctor's conclusions regarding total disability unreliable because based entirely upon non-conforming pulmonary function evidence).[5]
 
 
 42
 The ALJ's failure to consider the supplemental letter in making his Sec. 718.204(c)(4) determination was harmless.
 
 IV.
 
 43
 For the foregoing reasons, we AFFIRM the judgment of the Benefits Review Board.
 
 
 
 *
 The Honorable Wendell A. Miles, Senior Judge for the United States District Court for the Western District of Michigan, sitting by designation
 
 
 [2]
 Pulmonary function tests were also performed by Dr. Williams but the ALJ found these reports nonqualifying and invalid. Muncy does not challenge the ALJ's findings with respect to Dr. Williams' tests
 
 
 [3]
 This is so because men of Muncy's asserted age and height must have an FEV of about 1.83 or less and either an FVC of about 2.31 or less or an MVV of about 73 or less to establish total disability under Sec. 718.204(c)(1). Dr. Baker's report states that Muncy had an FEV of 1.79 and an MVV of 61
 
 
 [4]
 A "non-conforming" pulmonary function study is one that does not comply with the quality standards set forth in 20 C.F.R. Sec. 718.103, Part 718, Appendix. Director, OWCP v. SIWIEC, 894 F.2d 635, 636 n. 2 (3d Cir.1990)
 
 
 [5]
 We are somewhat puzzled by the fact that Dr. Baker's September 1987 report concluded that Muncy suffered from pneumoconiosis with "mild to moderate obstructive ventilatory defect with a mild degree of restriction" and his January 1988 supplemental letter, based upon the same September 1987 examination, states that Muncy is totally and permanently disabled