

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-25-2002

# Marcella Kosik v. Director OWCP

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-3176

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

### Recommended Citation

"Marcella Kosik v. Director OWCP" (2002). *2002 Decisions.* Paper 440.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/440

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 01-3176


MARCELLA KOSIK,
(Widow of GEORGE M. KOSIK),

Petitioner

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION
PROGRAMS, UNITED STATES DEPARTMENT OF LABOR


On Petition for Review of a Decision and Order of the
Benefits Review Board, United States Department of Labor
(BRB No. 00-0923 BLA)


Argued March 7, 2002

Before: SCIRICA and COWEN, Circuit Judges,
RESTANI, Judge, United States Court of International Trade

(Filed: July 25, 2002)

GEORGE E. MEHALCHICK, ESQUIRE (ARGUED)
Lenahan & Dempsey
Kane Building, Suite 400
116 North Washington Avenue
Scranton, Pennsylvania 18503-0234

        Attorney for Petitioner


RITA ROPPOLO, ESQUIRE (ARGUED)
JEFFREY S. GOLDBERG, ESQUIRE
PATRICIA M. NECE, ESQUIRE
United States Department of Labor
Office of the Solicitor
Suite N-2117
200 Constitution Avenue, N.W.
Washington, D.C. 20210

        Attorneys for Respondent

OPINION OF THE COURT


RESTANI, Judge.

This matter is before this court on Marcella Kosik's petition of review of a decision and order of the Benefits Review Board of June 15, 2001, affirming a decision and order of an administrative law judge ("ALJ") of May 16, 2000. The ALJ denied her claim for survivor's benefits under the Black Lung Benefits Act, as amended, 30 U.S.C. 910-934, on the grounds that pneumoconiosis did not contribute to the death of her husband, George Kosik ("decedent").

We have jurisdiction over this black lung benefits appeal pursuant to 30 U.S.C. 932(a). See Lukosevicz v. Director, OWCP, 888 F.2d 1001, 1003 (3d Cir. 1989). We review the Board's decision for errors of law and to ensure that the Board has adhered to its scope of review. See Oravitz v. Director, OWCP, 843 F.2d 738, 739 (3d Cir. 1988). Therefore, we must conduct an independent review of the record and "decide whether the ALJ's findings are supported by substantial evidence." Sun Shipbuilding & Dry Dock Co. v. McCabe, 593 F.2d 234, 237 (3d Cir. 1979). "'Substantial evidence' has been defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Kowalchick v. Director, OWCP, 983 F.2d 615, 620 (3d Cir. 1990) (internal quotation marks and citations omitted).

The ALJ and the Board set forth the background of the matter in their respective decisions, so we need not go into great detail here. In short, decedent worked as a coal miner from 1943 until 1972 and as a carpenter from 1972 until his retirement in 1993 at age 65. He filed claims for black lung disability benefits in 1986 and again in 1990, but his claims were denied because the medical evidence showed that he suffered from only a minor respiratory condition. On November 13, 1996, decedent was hospitalized after suffering a stroke. After eight days in the hospital, his family decided against pursuing aggressive measures and authorized his removal from the ventilator. He died on November 23, 1996.

On March 4, 1998, Mrs. Kosik filed a claim for survivor's benefits under the Black Lung Benefits Act, asserting that coal worker's pneumoconiosis hastened her husband's death. On December 13, 1999, Administrative Law Judge Ainsworth Brown held a hearing, and on May 16, 2000, he issued an 11-page opinion denying petitioner's claim for survivor's benefits. See Kosik v. Director, OWCP, 1999-BLA-00235 (May 16, 2000) (App. 21A-32A). On June 15, 2001, the Benefits Review Board affirmed the ALJ's decision, concluding that it was supported by substantial evidence in the record. See Kosik v. Director, OWCP, BRB No. 00-0923 BLA (June 15, 2001) (App. 13A-20A).

To be entitled to survivor's benefits, petitioner must prove that her husband's death was "due to pneumoconiosis" arising out of his employment in coal mines. 30 U.S.C. 901(a). See also 20 C.F.R. 718.1. The regulations provide that "death will be considered due to pneumoconiosis" if "pneumoconiosis was a substantially contributing cause or factor leading to the miner's death." 20 C.F.R. 718.205(c)(2). We held in Lukosevicz, 888 F.2d at 1006, that pneumoconiosis is a "substantially contributing cause" of death if it "actually hasten[s] the miner's death." The Board affirmed the ALJ's finding that decedent's pneumoconiosis was too mild to have caused his death. Petitioner contends, however, that the ALJ erred in relying on the opinion of a reviewing physician instead of the opinions of three treating physicians in concluding that decedent's pneumoconiosis was not a "substantially contributing cause" of death.

Petitioner's argument is based largely on the faulty premise that medical opinions of treating physicians must be given greater weight than opinions of reviewing physicians. See Br. of Pet'r at 14, 15. To the contrary, the ALJ "is not bound to accept the opinion or theory of any medical expert, but may weigh the medical evidence and draw its own inferences." Director, OWCP v. Siwiec, 894 F.2d 635, 639 (3d Cir. 1990) (quoting Markus v. Old Ben Coal Co., 712 F.2d 322, 326 (7th Cir. 1983)). Indeed, we have refused to automatically credit the opinions of treating physicians, concluding that "the ALJ may permissibly require the treating physician to provide more than a conclusory statement." Lango v. Director, OWCP, 104 F.3d 573, 578 (3d Cir. 1997). Rather than simply accept a medical opinion, the ALJ must analyze the medical opinion to determine whether it is well supported and well reasoned.

> The mere fact that an opinion is asserted to be based upon medical studies cannot by itself establish as a matter of law that it is documented and reasoned. Rather, that determination requires the factfinder to

> examine the validity of the reasoning of a medical opinion in light of
> the studies conducted and the objective indications upon which the
> medical opinion or conclusion is based.

Siwiec, 894 F.2d at 639 (quoting Director, OWCP v. Rowe, 710 F.2d 251, 255 (6th Cir. 1983)) (internal footnote omitted).

Petitioner relies on Mancia v. Director, OWCP, 130 F.3d 579 (3d Cir. 1997), to support her position that the ALJ was required to credit the opinions of the treating physicians over the opinion of the reviewing pathologist. Her interpretation of the case, however, is flawed. In Mancia, the ALJ followed the medical conclusion of a non-treating physician instead of that of a treating physician in denying survivor's benefits to the widow of a deceased coal miner. See id. at 593. We reversed the Board's affirmance of the ALJ's decision, concluding that the non-treating physician's report  which served as the sole basis for the ALJ's decision  was "inconsistent on its face" and was contradicted by the totality of the record evidence. Id. at 590-93.

As respondent argues in his brief, Mancia does not hold that a conclusory or insufficiently supported opinion of a treating physician always outweighs an opinion of a non-treating physician. Instead, Mancia provides that an unsupported opinion of a treating physician may outweigh an opinion of a non-treating physician if the latter opinion is contradicted by the objective medical evidence in the record. The factual situation in Mancia is distinguishable from the instant case:  the medical opinion of the non-treating physician, Dr. Perper, is contradicted only by the opinions of Drs. Druffner, Pelczar, and Koval, not by the objective medical evidence found in the record. In fact, Mancia actually supports the ALJ's decision to credit Dr. Perper's conclusions over the treating physicians' opinions, for the court explicitly stated in Mancia that "there may be situations where the nature of a non-treating physician's report is sufficient, in context with all the other evidence in the case, to support a conclusion that is contrary to the opinion of a treating physician." Id. at 591. This case appears to be such a situation.

Petitioner also contends that the ALJ erred by "ignoring" the medical opinions of Drs. Druffner, Pelczar, and Koval that pneumoconiosis hastened decedent's death. Br. of Pet'r at 12. Her argument, however, is without merit. The ALJ considered each doctor's opinion but critically analyzed them in light of other medical evidence in the record  namely, the medical evidence relating to the existence and extent of the decedent's pneumoconiosis and Dr. Perper's detailed, twenty-one page report. The ALJ neither blindly rejected the reports of Drs. Druffner, Pelczar, and Koval nor irrationally followed the analysis of Dr. Perper. Instead, he explained in a detailed and well-reasoned fashion why the opinions of the three treating physicians were not as persuasive as the opinion of Dr. Perper.

For instance, the ALJ observed that the treating physicians overstated the severity of decedent's respiratory condition. See App. 28A-29A. The ALJ determined that the medical evidence - including an inconclusive chest x-ray on April 20, 1995; the most recent pulmonary function study on April 24, 1995, which showed only a "mild restriction"; decedent's previous denials of black lung benefits because he suffered from only a mild respiratory condition; and the autopsy report's diagnosis of "simple coal worker's pneumoconiosis" - demonstrated that the decedent's pneumoconiosis was mild. The ALJ reasonably concluded, therefore, that the opinions of the treating physicians were based on faulty assumptions about the severity of decedent's pneumoconiosis before he died, which undermined the persuasiveness of their conclusions that the condition hastened his death.

The ALJ further discounted Dr. Druffner's opinion because he did not explain how decedent's pneumoconiosis contributed to his death, but instead simply stated that the condition made survival less likely and shortened his life. As the ALJ explained, a diagnosis of pneumoconiosis is not sufficient to carry the claimant's burden of proving that death is hastened by it. The ALJ also concluded that Dr. Druffner's opinion was undermined by his attempt to minimize the effect of the stroke on the decedent's condition. The ALJ instead accepted Dr. Perper's conclusion that decedent died of a massive stroke accompanied by terminal bronchopneumonia. The ALJ's choice is further supported by the fact that Dr. Perper is a well-credentialed, board-certified forensic pathologist and Dr. Druffner is neither board-certified nor an internist, pulmonologist, or pathologist.

The ALJ also explained that he found Dr. Pelczar's conclusions to be less

convincing than Dr. Perper's analysis insofar as Dr. Pelczar, who did not treat decedent during his final hospitalization, merely relied on Dr. Druffner's death certificate and the limited autopsy report to form his conclusions, whereas Perper not only considered these items, but also examined autopsy slides of decedent's lung tissue and reviewed all of the medical evidence in the record. See App. 29A-30A. The ALJ also rejected Dr. Pelczar's conclusory finding that decedent's "weakened lungs" were unable to sustain life. App. 29A. He found more convincing Dr. Perper's explanation that decedent's respiratory failure was brought on by terminal pneumonia, which is a common complication of cerebro-vascular coma and brainstem infarction. Along the same vein, the ALJ gave no weight to Dr. Koval's opinion and "spare analysis" that decedent's pneumoconiosis caused "retained secretions" and bronchopneumonia, which directly led to respiratory failure. App. 29A. Instead, he was persuaded by Dr. Perper's opinion that the bronchopneumonia was caused by the stroke itself. The ALJ also determined that Dr. Koval's opinion was impeached by Dr. Perper's report, which explained that Dr. Koval could not have arrived at his diagnosis by simply conducting a physical examination of decedent after he was comatose and experiencing Cheynes-Stoke respiration.

Petitioner also characterizes the ALJ's evaluation of the relevant medical evidence as "unexplained attacks" on the opinions of Drs. Druffner, Pelczar, and Koval. Br. of Pet'r at 11. Notwithstanding petitioner's assertion, the ALJ's critical analysis of the opinions rendered by the treating physicians cannot be characterized as "attacks." The ALJ was obligated "to examine the validity of the reasoning of [the] medical opinion in light of the studies conducted and the objective indications upon which the medical opinion or conclusion is based." Rowe, 710 F.2d at 255. Moreover, as already noted above, the ALJ's evaluation of the treating physicians' opinions hardly can be described as "unexplained," for the ALJ explains in significant detail why he has given little weight to opinions of the treating physicians.

In the end, having concluded that the ALJ committed no errors of law, we must determine whether the ALJ's decision was based on substantial evidence. Accordingly, our task is not to conduct a de novo review of the evidence, but instead to determine whether a reasonable mind might conclude that the medical evidence is adequate to support the ALJ's ruling. After carefully reviewing the briefs and the record, we find that although there is a conflict among the medical opinions regarding whether pneumoconiosis contributed to the death of petitioner's husband, the ALJ properly and thoroughly evaluated all of the relevant evidence, and his conclusion that decedent's death was not hastened by pneumoconiosis was supported by substantial evidence. Moreover, we also find that the Board appropriately deferred to the ALJ's factual findings. Therefore, inasmuch as we find that there is substantial evidence to support the ALJ's conclusion that petitioner failed to meet the burden of proving that her husband's death was "due to pneumoconiosis," we will affirm the Board's decision.

For the foregoing reasons, we will deny the petition for review of the decision and order of the Benefits Review Board issued on June 15, 2001.
TO THE CLERK:
Please file the foregoing opinion.


/s/ Jane A. Restani
Judge



Marcella Kosik (Widow of George M. Kosik) v. Director, OWCP, et al.
No. 01-3176

SCIRICA, Circuit Judge, dissenting.
The Black Lung Benefits Act is a remedial measure. Lukosevicz v. Dir., OWCP, 888 F.2d 1001, 1006 (3d Cir. 1989). Pneumoconiosis "is a serious and progressive pulmonary condition popularly known as 'black lung.'" Mullins Coal Co. of Va. v. Dir., OWCP, 484 U.S. 135, 138 (1987). It is "a chronic dust disease of the lung and its sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." 30 U.S.C. 902(b) (1986). Pneumoconiosis that hastens death in

any way qualifies as a substantial cause of death and dictates the award of benefits. See Mancia v. Dir., OWCP, 130 F.3d 579, 585 (3d Cir. 1997).

George Kosik worked in coal mines for twenty nine years. As a result, he suffered from pneumoconiosis. Kosik was treated for respiratory problems by Drs. Lewis Druffner, Eugene Pelczar and Joseph Koval. Dr. Druffner treated Kosik for sixteen years, Dr. Pelczar for six years, and Dr. Koval during his final hospitalization. All three treating physicians opined that after suffering a stroke, pneumoconiosis hastened Kosik's death. Dr. Joshua Perper, a non-treating physician retained by the Department of Labor to review the medical records and autopsy slides, opined Kosik's pneumoconiosis was too mild to have hastened his death. Dr. Perper concluded that "Kosik died of a massive cerebro-vascular incident (massive brain stem infarct) with terminal mild bronchopneumonia." Finding Dr. Perper's opinion persuasive, the ALJ denied survivor benefits.

The record contains uncontradicted evidence of a history of shortness of breath and pulmonary disease. In 1983, thirteen years before his November 1996 hospitalization, Kosik suffered from shortness of breath upon exertion. Dr. Pelczar, who treated Kosik on a monthly basis from 1990 to 1996, stated that Kosik "was consistently short of breath" and as a result, he proscribed "Aminophylline 200 mg to be taken three times daily as needed." Kosik underwent pulmonary function studies in 1990 and 1995. These studies consistently showed abnormal results in pulmonary lung restriction, demonstrating restrictive lung disease. Kosik had a weakened pulmonary reserve before he had the stroke in 1996.

Kosik was admitted to the hospital on November 13, 1996, following "the abrupt onset of unresponsiveness." The next day, "[i]ncreased respiratory secretions occurred requiring suctioning." On November 19, "there was an abrupt deterioration in his respiratory status and he was intubated and placed on a ventilator and returned to the Intensive Care Unit." On November 21, the family decided not to pursue aggressive measures. Kosik died on November 23, 1996.

The autopsy of Kosik's lungs revealed "thick mucus" as well as "marked anthracoctic markings" and "silica crystals" consistent with "simple coal worker's pneumoconiosis." The discharge summary listed "1. Brain Stem Infarct  2. Acute Respiratory Failure 3. Chronic Obstructive Pulmonary Disease Secondary to Anthracosilicosis  4. Arteriosclerotic Cardiovascular Disease 5. Diabetes Mellitus, Recent Onset, Type I" as the final diagnosis. Kosik's treating physicians established a nexus between Kosik's lung capacity as they observed it through physical examination and clinical studies, and his capacity to survive after suffering a stroke that impacted his lungs. Dr. Koval, who examined and treated Kosik during his final days, concluded,

> [B]ased on my physical examination and in hospital care of Mr. Kosik, as well as my review of the autopsy findings, that anthrasilicosis directly contributed to, and hastened his death. Patients with anthrasilicosis which causes chronic obstructive pulmonary disease, cannot cough effectively and therefore cannot effectively clear their pulmonary secretions. The end result is death due to respiratory failure. This is exactly what happened to Mr. Kosik in the period after he suffered his stroke.

The ALJ largely based its decision on Dr. Perper's expert opinion. As noted, Dr. Perper concluded that Kosik's pneumoconiosis was too mild to hasten Kosik's death. Although Dr. Perper's opinion was otherwise comprehensive, he did not explain this conclusion nor discuss Kosik's pre-existing lung restrictions and his weakened pulmonary reserve in relation to the secretions in his lungs which necessitated suctioning, intubation, and mechanical ventilation. This is particularly troubling in light of the fact that all three treating physicians came to a different conclusion than Dr. Perper. Furthermore, there was insufficient evidence in the record to counter the opinions that Kosik's death was hastened by his pneumoconiosis and that he did not die solely as the result of a brain stem infarct. Viewing the record as a whole, the grounds cited in support of the ALJ's conclusion do not amount to substantial evidence.

We have noted that "courts have repeatedly recognized that the remedial nature of the statute requires a liberal construction of the Black Lung entitlement program to ensure widespread benefits to miners and their dependents." Keating v. Dir., OWCP, 71

F.3d 1118 (3d Cir. 1995) (citation omitted).  Kosik worked in the coal mines for nearly three decades and developed pneumoconiosis.  "[C]oal workers' pneumoconiosis . . . is a dreadful and insidious disease which interferes with the respiratory functions of its victims, and which slowly and progressively makes the very act of breathing more and more difficult."  Curse v. Dir., OWCP, 843 F.2d 456, 457 (11th Cir. 1988) (quoting 124 Cong. Rec. S2,333 (daily ed. Feb. 6, 1978) (statement of Sen. Williams)).

Kosik experienced more than a decade of breathing problems before his death. Kosik's spouse, physician-son, Dr. Druffner, Dr. Pelczar and Dr. Koval all observed increased breathing problems up to the time of Kosik's death.  Kosik's pulmonary function studies revealed restrictive lung disease.  After suffering a stroke, Kosik's lungs eventually filled with mucus that could not be cleared without suctioning, intubation and mechanical ventilation.  The physicians that examined, tested and treated Kosik while he was alive concluded that his pneumoconiosis hastened his death.  By contrast, Dr. Perper's conclusion to the contrary is insufficiently explained or supported by the record.

For these reasons, I would find the ALJ's decision was not supported by substantial evidence in the record.  I would reverse the judgment of the Board affirming the ALJ' s denial of survivor benefits and remand for the limited purpose of awarding survivor's benefits.