RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0032p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

SOUTHERN OHIO COAL COMPANY; CONSOL ENERGY, INC.,

         *Petitioners*,

    *v.*

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, U.S. DEPARTMENT OF LABOR; DONALD HUNTER,

         *Respondents*.

No. 24-3523

─────────────────

On Petition for Review from the Benefits Review Board;
No. 23-0302 BLA.

Decided and Filed: February 11, 2025

Before: SUTTON, Chief Judge; MOORE and RITZ, Circuit Judges.

─────────────────

### COUNSEL

─────────────────

**ON BRIEF:** Christopher L. Wildfire, SUTTERWILLIAMS, LLC, Pittsburgh, Pennsylvania, for Petitioners. Wes Addington, APPALACHIAN CITIZENS' LAW CENTER, Whitesburg, Kentucky, for Respondent Donald Hunter.

─────────────────

### OPINION

─────────────────

KAREN NELSON MOORE, Circuit Judge. Southern Ohio Coal Company ("Southern Ohio Coal") petitions this court for review of a decision awarding federal coal miners' benefits to former miner, Donald Hunter. Southern Ohio Coal argues that the adjudicators below erred by relying on medical evidence that did not comply with regulatory quality standards and by

relieving Hunter of his burden to establish that he met the conditions for entitlement to benefits. In particular, Southern Ohio Coal argues that Hunter did not establish that he has legal pneumoconiosis or that his total disability is caused by pneumoconiosis. Because the administrative law judge ("ALJ") acted within his discretion and because his decision was supported by substantial evidence, the petition for review is **DENIED**.

## I. BACKGROUND

### A. Legal Background

This case arises under the Black Lung Benefits Act ("BLBA") and its implementing regulations.[1] The BLBA provides benefits to (1) totally disabled former coal miners who (2) have pneumoconiosis (sometimes known as black lung) (3) that arises out of coal-mine employment and (4) which contributes to the miner's total disability. 30 U.S.C. § 901(a); 20 C.F.R. § 725.202(d).

The regulations implementing the BLBA recognize two types of pneumoconiosis: clinical pneumoconiosis (which is not relevant in this case) and legal pneumoconiosis. 20 C.F.R. § 718.201(a). Legal pneumoconiosis "includes any chronic lung disease or impairment and its sequelae arising out of coal mine employment." *Id.* § 718.201(a)(2). "[A] disease 'arising out of coal mine employment' includes any chronic pulmonary disease or respiratory or pulmonary impairment significantly related to, or substantially aggravated by, dust exposure in coal mine employment." *Id.* § 718.201(b).

A miner is totally disabled if "the miner has a pulmonary or respiratory impairment which, standing alone, prevents or prevented the miner . . . [f]rom performing his or her usual coal mine work; and . . . [f]rom engaging in gainful employment . . . requiring the skills or abilities comparable to those of any employment in a mine. . . ." *Id.* § 718.204(b)(1).

Pneumoconiosis contributes to a miner's total disability if it "is a substantially contributing cause of the miner's totally disabling respiratory or pulmonary impairment." *Id.*

---

[1]The BLBA is administered by the Office of Workers' Compensation Programs ("OWCP") out of the Department of Labor ("the Department" or "DOL").

§ 718.204(c)(1). "Pneumoconiosis is a 'substantially contributing cause' of the miner's disability if it . . . [h]as a material adverse effect on the miner's respiratory or pulmonary condition; or . . . [m]aterially worsens a totally disabling respiratory or pulmonary impairment which is caused by a disease or exposure unrelated to coal mine employment." *Id.* § 718.204(c)(1)(i)–(ii).

### 1. Causation Under the BLBA

Under the regulatory framework described above, claimants "must meet two independent causation requirements in order to receive federally-mandated black lung benefits. One relates to causation of the disease by coal mining; the other relates to causation of the total disability by the disease." *Arch on the Green, Inc. v. Groves*, 761 F.3d 594, 595 (6th Cir. 2014). The briefing in this case mixes these two concepts, so for clarity's sake we isolate them here.

### a. Legal Pneumoconiosis

We begin with the first causation requirement—causation of the pulmonary or respiratory disease by coal mining. Where medical evidence does not establish clinical pneumoconiosis, a claimant may still meet the first causation requirement by establishing that they have legal pneumoconiosis, which includes "any chronic restrictive or obstructive pulmonary disease arising out of coal mine employment." 20 C.F.R. § 718.201(a)(2). The regulations provide what at first seem to be two different causation standards by which a miner may show their disease or condition arises from coal mining. We have, however, read 20 C.F.R. § 718.201(b)'s requirement that the relevant respiratory or pulmonary condition be "significantly related to, or substantially aggravated by" exposure to coal dust in coal-mine employment to be coextensive with the requirement in 20 C.F.R. § 718.203(a) that the miner's condition "arose *at least in part* out of coal mine employment." (emphasis added); *see Groves*, 761 F.3d at 598–99. For that reason, under the law of our circuit, "while [claimants] ha[ve] to prove that [their respiratory or pulmonary conditions are] 'significantly related to, or aggravated by, exposure to coal dust,' [they] can satisfy this burden by showing that [their] disease was caused 'in part' by coal mine employment." *Groves*, 761 F.3d at 598–99 (citation omitted); *see Southard v. Dir., OWCP*, 732 F.2d 66, 72 (6th Cir. 1984).

### b. Total-Disability Causation

The second causation requirement—causation of the total disability by the disease, or total-disability causation—is somewhat stricter. A claimant must show more than that they are totally disabled *in part* due to pneumoconiosis (legal or clinical). *Groves*, 761 F.3d at 601. Instead, the miner must demonstrate that pneumoconiosis had "a material adverse effect on the miner's respiratory or pulmonary condition" or "[m]aterially worsen[ed] a totally disabling respiratory or pulmonary impairment" not related to coal-mine employment. 20 C.F.R. § 718.204(c)(1).

## B. Factual and Procedural Background

Respondent Donald Hunter is a former coal miner who worked in the mines for eleven to twelve years. He worked most recently for Southern Ohio Coal, which does not contest that it is the coal operator responsible for funding any benefits paid to Hunter. *See* Pet'r Br. at 4. Hunter applied for benefits under the BLBA in 2019. Joint Appendix (J.A.) at 41–44 (App.). Hunter's application proceeded to a hearing before an ALJ. There, Southern Ohio Coal contested Hunter's entitlement to benefits, arguing, as relevant here, that Hunter's chronic obstructive pulmonary disease ("COPD") and related conditions did not constitute legal pneumoconiosis because they did not arise out of his coal-mine employment and were instead caused by Hunter's significant history of smoking cigarettes. *Id.* at 15 (ALJ Op. at 3). Southern Ohio Coal also argued that smoking, and not pneumoconiosis, was the cause of Hunter's total disability. *Id.*

Both sides presented evidence in the form of expert-witness testimony, medical records, and Hunter's own testimony. After a hearing on the record, the ALJ considered the parties' evidence and awarded benefits to Hunter, finding that Hunter was totally disabled by his COPD, that his COPD arose out coal-mine employment and therefore constituted legal pneumoconiosis, and that his pneumoconiosis caused his total disability. *Id.* at 34–36 (ALJ Op. at 22–24). Southern Ohio Coal appealed to the BRB, arguing that the ALJ erred by discrediting its evidence against entitlement and by crediting Hunter's evidence in favor of the same. *Id.* at 371–81 (BRB Br. at 17–27). The company also argued that the ALJ misapplied regulatory guidance to discredit its expert witnesses. *Id.* at 371–72, 377–78 (BRB Br. at 17–18, 23–24). The BRB

affirmed the ALJ, holding that the ALJ had considered and accurately characterized all the relevant evidence and had sufficiently explained his reasons for weighing the evidence as he did. *Id.* at 4–7 (BRB Op. at 4–7). Nor, according to the BRB, did the ALJ err by relying on regulatory guidance as a basis for his credibility determinations. *Id.* at 4 (BRB Op. at 4).

Southern Ohio Coal petitioned this court for review, arguing first that the ALJ erred by relying on medical evidence that, Southern Ohio Coal contends, was noncompliant with regulatory quality standards. Second, Southern Ohio Coal argues that Hunter failed to carry his burden of proof to establish his entitlement to benefits.

## II.  ANALYSIS

### A.  Standard of Review

"While we must affirm the Board's decision unless the Board has committed legal error or exceeded its scope of review, our review actually focuses on whether the ALJ's decision is supported by substantial evidence." *Island Creek Ky. Mining v. Ramage*, 737 F.3d 1050, 1056 (6th Cir. 2013). "The ALJ must have applied the governing law correctly to reach a conclusion supported by substantial evidence," which is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Kolesar v. Youghiogheny & Ohio Coal Co.*, 760 F.2d 728, 729 (6th Cir. 1985)). "We do not reweigh the evidence or substitute our judgment for that of the ALJ." *Id.* (quoting *Tenn. Consol. Coal Co. v. Kirk*, 264 F.3d 602, 606 (6th Cir. 2001)). "In particular, 'the law requires the ALJ as trier of fact to determine whether the medical evidence before him is sufficiently documented and reasoned, and to weigh the evidence accordingly.'" *Incoal, Inc. v. Dir., OWCP*, 123 F.4th 808, 820 (6th Cir. 2024) (quoting *Grayson Coal & Stone Co. v. Teague*, 688 F. App'x 331, 336 (6th Cir. 2017)) (alterations accepted). An ALJ's "determinations to credit or discredit . . . medical opinions based on whether they are sufficiently documented and reasoned is a credibility matter that we must leave to the ALJ." *Big Branch Res., Inc. v. Ogle*, 737 F.3d 1063, 1073 (6th Cir. 2013).

**B. The ALJ Did Not Consider Invalid Medical Evidence**

The BLBA's implementing regulations set out various methods by which claimants may establish that they are totally disabled and that pneumoconiosis substantially contributed to their disability. Among other medical evidence, claimants may rely on chest x-rays, physician reports of physical examinations, arterial blood-gas studies, and lay testimony to demonstrate total disability. 20 C.F.R. § 718.204(b)(2), (d); *see also id.* § 718.104, 718.107. As relevant here, a claimant may also demonstrate that they are totally disabled by presenting a qualifying pulmonary function test ("PFT"). *Id.* § 718.204(b)(2)(i). PFT results qualify as demonstrating total disability if they are equal to or less than the relevant thresholds set out in Appendix B to Part 718 of the regulations. *Id.*

The regulations also establish various quality standards for medical evidence in black-lung cases. Generally, 20 C.F.R. § 718.101(b) provides that "[a]ny clinical test or examination subject to" the regulations "shall be in substantial compliance with the applicable standard in order to constitute evidence of the fact for which it is proffered." Most relevant for our purposes is the provision stating that PFTs "shall not be performed during or soon after an acute respiratory illness." 20 C.F.R. pt. 718 app. B § (2)(i). Together 20 C.F.R. § 718.103 and Appendix B set out additional standards specific to PFTs, including that compliant PFTs must be accompanied by statements setting forth, among other things, the degree of the claimant's comprehension and cooperation with testing procedures, and details about the use of bronchodilators. "In the absence of evidence to the contrary, compliance with the requirements . . . shall be presumed." *Id.* § 718.103(c).

Southern Ohio Coal argues that the ALJ erred by considering a qualifying PFT administered by the DOL's designated examiner, Dr. Feicht, on April 11, 2019.[2] Southern Ohio

---

[2]A PFT's compliance with regulatory quality standards is ordinarily relevant to the determination of whether a miner is totally disabled, rather than whether the miner has legal pneumoconiosis or whether pneumoconiosis is a cause of the miner's total disability. *See* 20 C.F.R. § 718.204. The BRB determined that Southern Ohio Coal challenged only the ALJ's findings that Hunter had legal pneumoconiosis and that his total disability was *caused* by pneumoconiosis, but that Southern Ohio Coal did not contest that Hunter was totally disabled. J.A. 2 & n.2, 9 (BRB Op. at 2 & n.2, 9). Hunter thus contends that Southern Ohio Coal has waived its PFT argument "because it failed to properly raise this issue before the Board as a challenge to [the] ALJ's total disability finding." Resp't Br. at 26. But Southern Ohio Coal's argument before us is that the allegedly noncompliant PFT poisons not just the ALJ's total-disability finding, but also the ALJ's legal pneumoconiosis and

Coal bases this assertion on the opinion of its expert, Dr. Manaker, that the April 11, 2019 PFT was noncompliant with regulatory quality standards because "Claimant was acutely ill at the time of the April 11, 2019 spirometry." Pet'r Br. at 17. Manaker's opinion was "based upon [Manaker's] review of the VA treatment records," namely notes from an April 16, 2019 appointment with another doctor reflecting that Hunter reported having had a cough for the previous two weeks. *Id.*; *see* J.A. at 143, 145 (Manaker Rep. at 6, 8).

The ALJ gave no weight to Dr. Manaker's opinion that the PFT was noncompliant, noting that the records on which the expert relied to find that Hunter was acutely ill on April 11 were dated April 16, 2019, several days *after* the relevant PFT. *Id.* at 22 (ALJ Op. at 10). Further, Dr. Feicht, who actually examined Hunter on April 11, 2019, did not himself diagnose acute illness, but *chronic* pulmonary disease. *Id.*; *see id.* at 62 (Feicht Rep. at 6). The ALJ therefore credited Dr. Feicht's statement that "[t]he results of [the April 11, 2019 PFT] meet the ATS[3] standards for acceptability and repeatability," as well as the fact that another physician "independently reviewed the PFT and concluded it was valid." *Id.* at 22 (ALJ Op. at 10).

These facts constitute substantial evidence supporting the ALJ's conclusion that the PFT was compliant, especially given that a PFT is noncompliant with the regulation only if "performed during or soon after" (but not before) "an acute respiratory illness." 20 C.F.R. pt. 718 app. B § (2)(i). The ALJ was empowered to determine whether expert opinions like Dr. Manaker's noncompliance determination were well-reasoned and well-documented, *Ogle*, 737 F.3d at 1073, and the regulations require the ALJ to start with a presumption that the results of any given PFT are compliant, 20 C.F.R. § 718.103(c).

---

total-disability causation findings. Pet'r Br. at 15–16. And Southern Ohio Coal's brief before the BRB clearly laid out its belief that the April 11, 2019 PFT was noncompliant and that the ALJ erred because "the preponderance of the evidence d[id] not support total pulmonary disability due to pneumoconiosis." J.A. at 373, 379–80 (Southern Ohio Coal BRB Br. at 19, 25–26). The BRB had the opportunity to and did address Southern Ohio Coal's noncompliance and total-disability causation arguments. *Id.* at 5–9 (BRB Op. at 5–9). And regardless, Southern Ohio Coal's noncompliance argument fails on the merits.

[3]We gather that "ATS" stands for American Thoracic Society. *See* American Thoracic Society, *ATS Official Documents – Pulmonary Function Testing*, https://www.thoracic.org/statements/pulmonary-function.php (last visited Jan. 24, 2025).

Southern Ohio Coal nonetheless contends that Dr. Manaker's acute-illness opinion rendered the April 11, 2019 PFT "non-conforming, invalid, and unreliable for any purpose for this case, for establishing a respiratory disability, for supporting a doctor's opinion of respiratory disability, with which to criticize a physician's non-disability diagnosis, and/or to support an award of benefits." Pet'r Br. at 15–16. The breadth of Southern Ohio Coal's argument is notable because, although the regulations provide that PFTs are a method of proving total disability, under Southern Ohio Coal's theory, a noncompliant PFT would invalidate any expert or ALJ opinion relying on it. This sweeping conclusion is belied by the regulations, which provide that "[i]f it is established that one or more [quality] standards have not been met, the claims adjudicator may consider such fact in determining the evidentiary weight to be given to the results." 20 C.F.R pt. 718 app. B (introduction). A PFT's noncompliance with regulatory quality standards thus goes to the weight of the evidence, a matter committed to the discretion of the ALJ. *Consol. Coal Co. v. Worrell*, 27 F.3d 227, 231 (6th Cir. 1994) (holding that the ALJ did not err by considering tests that varied from the quality standards because the regulations required only "substantial compliance" and because "Appendix B permits the ALJ to consider even those test results that do not satisfy the quality standards").

Southern Ohio Coal's reliance on the Third Circuit's holding in *Director, OWCP v. Siwiec*, 894 F.2d 635 (3d Cir. 1990), cannot not save its argument that Dr. Manaker's acute-illness opinion rendered the April 11, 2019 PFT incapable of supporting entitlement. We are, of course, not bound by out-of-circuit precedent. Further, we note that the PFTs in *Siwiec* were noncompliant because they did not include statements about the miner's comprehension and cooperation with testing procedures and did not include tracings, all of which were required under the regulations. 894 F.2d at 637. The ALJ in *Siwiec* could therefore assess easily and objectively whether the PFTs were compliant; the PFTs either contained the required statements and tracings, or they did not.[4] By contrast, Southern Ohio Coal's noncompliance argument rests on its expert's *opinion* that Hunter was acutely ill at the time of the PFT. The ALJ, as trier of

---

[4]The ALJ in the instant case did in fact refuse to consider additional PFTs that lacked the same elements as those missing in *Siwiec*. J.A. at 19 (ALJ Op. at 7). Hunter's treatment records contained other PFTs, but those PFTs were not accompanied by "all the [required] pre- and post-bronchodilator values, trials, or tracings," so the ALJ did not consider them. *Id.*

fact, was not required to accept such an opinion when it was contradicted by other evidence in the record. *See Incoal, Inc.*, 123 F.4th at 820.

Additionally, in *Siwiec*, "[t]he ALJ did not make *any* findings as to whether the pulmonary function studies were in 'substantial compliance' with the quality standards" and merely "referr[ed]" to those standards. 894 F.2d at 639 (emphasis added). Here, the ALJ confronted Dr. Manaker's opinion head on but simply declined to credit it, instead crediting other experts' conclusions that the PFT was valid. J.A. at 22 (ALJ Op. at 10). The ALJ was within his discretion to weigh such evidence in determining that the April 11, 2019 PFT was compliant and supported Hunter's entitlement to benefits. *See Incoal, Inc.*, 123 F.4th at 820.

## C.  The ALJ Did Not Relieve Hunter of His Burden to Establish Causation

Southern Ohio Coal next argues that the reason the ALJ provided for discrediting its experts—the experts' failure to explain why coal-dust exposure could not have played a causal role in Hunter's condition in addition to cigarette smoke—improperly relied on regulatory guidance and could not support the conclusion that Hunter had proven the existence of legal pneumoconiosis and total-disability causation. Pet'r Br. at 25. Additionally, Southern Ohio Coal argues that Dr. Feicht's opinion stating that Hunter's COPD resulted equally from coal-dust-exposure and cigarette smoking could not support a finding of entitlement to benefits under the applicable preponderance-of-the-evidence standard. *Id.*[5] For these arguments, Southern Ohio Coal relies on a recent holding from a divided Fourth Circuit panel in *American Energy, LLC v. Director, OWCP* (*Goode*), 106 F.4th 319 (4th Cir. 2024).[6]

### 1.  The ALJ Did Not Flip the Burden of Proof to Southern Ohio Coal

We do not agree with Southern Ohio Coal's suggestion that the ALJ here used a piece of regulatory guidance—commonly referred to as the preamble—to flip the burden of proof to Southern Ohio Coal when he discredited the company's experts because they "did not

---

[5]Hunter contends that Southern Ohio Coal waived these two arguments as well, but we need not decide whether it did because Southern Ohio Coal's arguments fail anyway.

[6]Although Goode, the claimant miner, was not a first-named party in the Fourth Circuit case, the parties before us refer to the case as *Goode*, so we do the same.

sufficiently explain why over ten years of coal mine dust exposure did not significantly contribute to or aggravate Claimant's COPD or emphysema." J.A. at 32 (ALJ Op. at 20); *see id.* at 34 (ALJ Op. at 22).

The preamble is a regulatory preface accompanying a year-2000 update to the BLBA regulations, which "represented the agency's considered analysis and assessment of the then-existing science regarding the etiology and development of coal-linked lung diseases." *Incoal, Inc.*, 123 F.4th at 817; *see* 65 Fed. Reg. 79920 (Dec. 20, 2000). Our case law has long established that ALJs adjudicating black-lung benefits cases are "'entitled' to 'look at the preamble to assess expert witnesses' credibility.'" *Incoal, Inc.*, 123 F.4th at 817–18 (quoting *A&E Coal Co. v. Adams*, 694 F.3d 798, 802 (6th Cir. 2012)) (alterations accepted). "[B]y 'consulting a part of the preamble that contains a discussion of medical literature on black lung disease,' an ALJ 'in effect uses the preamble to test whether the theories of experts are consistent with medical literature.'" *Id.* at 818 (quoting *Groves*, 761 F.3d at 601) (alterations accepted). "[I]t is 'reasonable for an ALJ to give greater weight to the testimony of the medical expert whose opinion was supported by the prevailing view of the medical and scientific community as reflected in the regulatory preamble.'" *Id.* (quoting *Little David Coal Co. v. Dir., OWCP*, 532 F. App'x 633, 636 (6th Cir. 2012)) (alteration accepted).

Southern Ohio Coal suggests that the ALJ improperly relied on the preamble in discrediting its experts' causal opinions, but the company overstates the significance of the preamble to the ALJ's decision that the company's experts were not persuasive in part because they had failed to account for the influence of coal-dust exposure on Hunter's condition. The ALJ relied on the preamble to credit Dr. Feicht's opinion that Hunter *did* have legal pneumoconiosis, noting that the opinion was consistent with the Department's position (as set out in the preamble) that "smoking and coal mine dust exposure have additive effects" and that the presence of smoking-induced disease does not preclude the additional presence of legal pneumoconiosis. J.A. at 29–30 (ALJ Op. at 17–18). Here, unlike in *Goode*, inconsistency with the preamble was not "the only reason that the ALJ gave for finding [Southern Ohio Coal's experts] . . . less persuasive." *See* 106 F.4th at 333. In fact, the ALJ here did not specifically reference the preamble when finding that Southern Ohio Coal's experts were unpersuasive

because they failed to explain why coal dust could not have played a role in Hunter's condition. Nor did the ALJ hold that Southern Ohio Coal was required to prove as much. Instead, the ALJ simply noted that the experts' failure to explain what evidence precluded a finding of coal-induced lung disease was one of several reasons why the ALJ found each expert unpersuasive.**[7]** As *Goode* acknowledged, this fell within the ALJ's authority: "[an] ALJ [may] permissibly f[ind] the legal pneumoconiosis opinions of [the employer's] physicians to be less *persuasive* than those of [the miner's] physicians for any number of reasons, including less thorough analyses of the potential causes of [the miner's] respiratory impairment." *Id.*

But even if, as was the case in *Goode*, the ALJ had explicitly relied on the preamble to discredit Southern Ohio Coal's experts because they failed to exclude coal dust as a cause of the miner's condition, this does not amount to flipping the burden of proof to the coal company. Instead, our existing case law makes clear that it is a legitimate use of the preamble in assessing the credibility of expert witnesses. *Wilgar Land Co. v. Dir., OWCP*, 85 F.4th 828, 838–39 (6th Cir. 2023). "Though coal operators have long argued that ALJs improperly rely on the preamble in discrediting employer experts, we have repeatedly (if not universally) declined to review or displace ALJs' decisions to credit or discredit expert witnesses based on inconsistency between the expert opinion and the scientific analysis adopted by the regulations and explained by the preamble." *Incoal, Inc.*, 123 F.4th at 818 (collecting cases). Under the law of this circuit, it is not error for an ALJ to credit an opinion consistent with the preamble over one that fails to account for the preamble's scientific principles, for example, as relevant here, the principle that the risk of coal-dust exposure and smoking is additive. *Wilgar Land Co.*, 85 F.4th at 840 ("[W]e have recognized that judges may give less weight to experts who do not account for these 'additive effects' or explain why the effects would not exist for a miner."). As Judge Benjamin wrote, "[w]here one side's experts address the principles the preamble adopts, and the other side's experts argue their position despite the preamble's principles, [we] see no reason why an ALJ should be prohibited from finding an opinion in line with the preamble more credible than

---

**[7]**The ALJ provided several valid reasons for discrediting each expert, so even if it were error to discredit Southern Ohio Coal's experts for failing to account for the impact of coal-dust exposure on Hunter's condition, that error would be harmless. *See Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 249 (6th Cir. 1995) ("If the outcome of a remand is foreordained, we need not order one." (quoting *Sahara Coal Co. v. OWCP*, 946 F.2d 554, 558 (7th Cir. 1991))).

one at odds with its principles." *Goode*, 106 F.4th at 339 (Benjamin, J., dissenting). Southern Ohio Coal's real issue is with the ALJ's credibility determinations, which we do not disturb. *See Ogle*, 737 F.3d at 1073.

### 2. The ALJ Did Not Relieve Hunter of His Burden

Southern Ohio Coal next argues that Dr. Feicht's expert opinion—stating that Hunter's condition was equally caused by smoking and coal-mine-dust exposure—could not carry Hunter's burden to establish by a preponderance of the evidence the existence of legal pneumoconiosis or total-disability causation. For support, Southern Ohio Coal relies on the *Goode* court's characterization that to establish legal pneumoconiosis or total-disability causation, a miner must "show[] that his lung disease is more likely than not from coal dust" and cannot "solely rely[] on evidence equally indicative of coal-dust-induced lung disease and smoking-induced lung disease."[8] 106 F.4th at 327. True, the miner bears the burden to prove each condition of entitlement "by a preponderance of the evidence, except insofar as he is aided by a presumption." *Adams v. Dir., OWCP*, 886 F.2d 818, 820 (6th Cir. 1989). And true, a preponderance of the evidence is a showing that the fact in contention is more likely than not. *See* Preponderance of the Evidence, Black's Law Dictionary (12th ed. 2024). But our case law makes clear the preponderance of the evidence standard is to be read in context with the causation standards built into the BLBA's conditions of entitlement.

There is no requirement that a miner show that coal-dust exposure is the only, or even the primary, cause of their condition. Miners need not even show that coal-dust exposure had a greater effect on their condition than did cigarette smoking. Instead, to establish legal pneumoconiosis, a miner's evidence must demonstrate that it is more likely than not that their condition arose *in part* from coal-mine employment. *See Groves*, 761 F.3d at 598–99; 20 C.F.R. § 718.201(b), § 718.203(a). And to establish total-disability causation, a miner must demonstrate

---

[8]We note that, in *Goode*, the miner's expert's opinion was materially different than Dr. Feicht's opinion in the instant case. The expert in *Goode* could not distinguish between coal dust and cigarette smoke as causes of the miner's condition. 106 F.4th at 329. Dr. Feicht, however, could and did distinguish between them; he just found that they exerted equal influence on Hunter's condition. J.A. at 62 (Feicht Rep. at 6). Dr. Feicht's opinion was thus indicative of both smoking-induced lung disease *and* coal-dust-induced lung disease. *Id*. By contrast, the *Goode* expert's opinion was evidently equivocal about the presence of either etiology. *Goode*, 106 F.4th at 329.

that it is more likely than not that pneumoconiosis "ha[d] a material adverse effect on the miner's respiratory or pulmonary condition," or that it "[m]aterially worsen[ed] a totally disabling respiratory or pulmonary impairment which [was] caused by a disease or exposure unrelated to coal mine employment." 20 C.F.R. § 718.204(c)(1). If a miner's evidence could equally support a finding that the miner's condition was caused by coal-dust exposure and a finding that the condition was caused by cigarette smoke, an ALJ still may be within their discretion to rely on that evidence to award benefits. This is true as long as the miner's evidence makes it more likely than not (1) that the miner's respiratory or pulmonary condition is due in part to coal-mine employment, and (2) that the miner's pneumoconiosis had a materially adverse effect on the miner's respiratory or pulmonary condition, or that it materially worsened a totally disabling respiratory or pulmonary impairment unrelated to coal-mine employment. *Groves*, 761 F.3d at 599–601.

In view of these established legal principles, we see no reason why the ALJ could not rely on Dr. Feicht's opinion that "occupational coal dust exposure . . . contributed to fifty percent of Claimant's COPD" to find that Hunter had established legal pneumoconiosis. J.A. at 29 (ALJ Op. at 17). We have already rejected Southern Ohio Coal's argument that the Dr. Feicht was precluded from relying on the April 11, 2019 PFT. *See supra* § II(B). Otherwise, Southern Ohio Coal does not take issue with the reliability of Dr. Feicht's opinion, for example, by contesting whether Dr. Feicht "based his diagnosis on objective medical evidence, considered [Hunter's] employment history and his smoking history," or "explained the basis for his opinion." *See Cumberland River Coal Co. v. Banks*, 690 F.3d 477, 487 (6th Cir. 2012). Nor does Southern Ohio Coal argue that the ALJ failed to "adequately explain[] his reliance" on Dr. Feicht's opinion. *See id.* In fact, the record indicates that the ALJ and Dr. Feicht both did all of those things. A reasonable mind would accept the record evidence, including Dr. Feicht's opinion, as adequate to support the conclusion that Hunter's condition was caused at least in part by coal dust. After all, fifty percent is certainly "part." The ALJ's decision on this point was therefore supported by substantial evidence. *See Groves*, 761 F.3d at 599 (holding that miner met his burden to show legal pneumoconiosis when expert physician explained that miner's "COPD was caused by both his smoking and his exposure to coal dust").

Nor did the ALJ err when finding that Hunter had established total-disability causation. As discussed above, the distinct causation standard for total-disability causation requires more than a showing that a claimant's total disability was caused at least in part by pneumoconiosis. *Id.* at 601. But the evidence in the record (including the April 11, 2019 PFT) was certainly sufficient to allow the ALJ to find that Hunter's pneumoconiosis had a materially adverse effect on Hunter's respiratory or pulmonary condition, or that it materially worsened a respiratory or pulmonary impairment unrelated to coal-mine employment. As addressed above, the ALJ had already determined based on substantial evidence that Hunter's COPD constituted legal pneumoconiosis. And the ALJ relied on Hunter's own testimony, his qualifying PFT, and physician opinions (including one from Southern Ohio Coal's expert) to find that Hunter's COPD was totally disabling. J.A. at 23–26, 35 (ALJ Op. at 11–14, 23). There was thus substantial evidence for the ALJ's finding that Hunter established total-disability causation. *See Dixie Fuel Co. v. Dir., OWCP*, 820 F.3d 833, 848 (6th Cir. 2016) (holding that substantial evidence existed for ALJ's finding of total-disability causation when ALJ credited physicians' opinions that claimant's legal pneumoconiosis was itself totally disabling). By finding otherwise, the ALJ neither flipped the burden of proof to Southern Ohio Coal nor relieved Hunter of that burden. Instead, the ALJ faithfully applied our law.

## III. CONCLUSION

The ALJ's decision in this case correctly applied the law and was supported by substantial evidence. It was not error for the ALJ to rely on the April 11, 2019 PFT. Nor did the ALJ err by discrediting expert opinions that failed to account for the impact of coal-dust exposure on Hunter or to grapple with the preamble. Lastly, it was not error for the ALJ to credit Dr. Feicht's opinion that Hunter's condition was caused equally by coal-dust exposure and cigarette smoking. For the foregoing reasons, the petition for review is **DENIED**.