**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 23-1667**

CLINCHFIELD COAL COMPANY, c/o HealthSmart Casualty Claims Solutions,

Petitioner,

v.

DIRECTOR, OFFICE OF WORKERS' COMPENSATION PROGRAMS, UNITED STATES DEPARTMENT OF LABOR; VERNON W. VANDERPOOL,

Respondents.

On Petition for Review of an Order of the Benefits Review Board.  (22-0355 BLA)

Argued:  October 21, 2025                         Decided:  January 15, 2026

Before WILKINSON, GREGORY, and BERNER, Circuit Judges.

Petition denied by published opinion.  Judge Gregory wrote the opinion, in which Judge Wilkinson and Judge Berner joined.

**ARGUED:**  Kendra R. Prince, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Petitioner. Mary Rachel Wolfe, WOLFE, WILLIAMS & AUSTIN, Norton, Virginia, for Respondents.  **ON BRIEF:**  Timothy W. Gresham, PENN, STUART & ESKRIDGE, Abingdon, Virginia, for Petitioner.

GREGORY, Circuit Judge:

Vernon Vanderpool worked in underground coal mines for over two decades as a roof bolter and later a section foreman. Some years after retiring due to a back injury, Mr. Vanderpool began reporting progressive shortness of breath, wheezing, and other respiratory symptoms that limited his exertion. He was eventually diagnosed with pneumoconiosis ("black lung disease"). On August 15, 2014, Mr. Vanderpool filed a claim with the U.S. Department of Labor ("DOL"), reporting that his respiratory ailments became totally disabling and seeking compensatory benefits under the Black Lung Benefits Act ("the Act"), 30 U.S.C. § 901 *et seq.*

In September 2016, a District Director of the DOL's Office of Workers' Compensation Programs issued a Proposed Decision and Order awarding benefits to Mr. Vanderpool, and an Administrative Law Judge ("ALJ") upheld that award. Clinchfield Coal Company ("Clinchfield"), Mr. Vanderpool's former employer, appealed to the DOL's Benefits Review Board ("Board"), which affirmed.

Clinchfield petitions this Court for review seeking to set aside Mr. Vanderpool's benefits award. Clinchfield challenges, as it did on its appeal to the Board, whether substantial evidence supports the ALJ's predicate finding of total disability, which permitted invocation of the rebuttable presumption available to claimants under 30 U.S.C. § 921(c)(4). In doing so, Clinchfield raises two arguments. First, Clinchfield argues that the ALJ misapplied 20 C.F.R. § 718.103(c) by crediting two pulmonary function tests that Clinchfield contends did not satisfy regulatory quality standards. Second, it contends that

2

the ALJ failed to adequately explain why he credited certain medical opinions over others as required by the Administrative Procedure Act, 5 U.S.C. § 557(c)(3)(A).

We disagree. Our review in black lung cases is highly deferential. Because the ALJ applied the correct legal standards and substantial evidence supports his evaluation of the pulmonary function tests and the medical opinion evidence, we affirm the Board's decision and deny Clinchfield's petition for review.

I.

A.

After Mr. Vanderpool filed his claim in August 2014, DOL sponsored a pulmonary evaluation conducted by Dr. Esther Ajjarapu. Dr. Ajjarapu concluded, on the basis of this evaluation, that Mr. Vanderpool was "totally and completely disabled due in part to his work in the mines." J.A. 358.[*] This evaluation included a pulmonary function test ("PFT") administered by Dr. Ajjarapu on October 29, 2014. The District Director submitted that study to Dr. Mohammed Ranavaya, a DOL-sponsored medical consultant, who independently validated it as "acceptable." J.A. 349. Throughout the years following, Mr. Vanderpool underwent several other medical tests, including one PFT again administered by Dr. Ajjarapu on February 23, 2018, but this time in the course of Mr. Vanderpool's medical treatment. Both the October 2014 and February 2018 tests produced qualifying values under 20 C.F.R. § 718.204(b)(2)(i) and Appendix B to part 718, a point Clinchfield does

---

[*] Citations to the "J.A." refer to the joint appendix filed by the parties in this appeal.

not dispute. *See* Pet'r Br. 7. Clinchfield contends, however, that the studies failed to satisfy the applicable quality standards. *See* 20 C.F.R. § 718.103(c); *id.* pt. 718, app. B.

After presiding over a formal hearing in June 2020, an ALJ awarded benefits to Mr. Vanderpool. In a thorough Decision and Order dated April 28, 2022, the ALJ credited the October 2014 and February 2018 PFTs, along with Dr. Ajjarapu's medical opinion, to find that Mr. Vanderpool established a totally disabling pulmonary impairment and, after invoking § 921(c)(4), that he was entitled to benefits. *Vanderpool v. Clinchfield Coal Co.*, No. 2017-BLA-05067, at 37 (U.S. Dep't of Lab., Off. of A.L.J. Apr. 28, 2022). The ALJ further found that Clinchfield failed to rebut the § 921(c)(4) presumption of total disability. *Id.*

Clinchfield appealed to the Benefits Review Board, arguing that invoking the § 921(c)(4) presumption was error because substantial evidence did not support the ALJ's findings regarding both PFT validity and the ALJ's weighing of medical opinions. The Board disagreed with Clinchfield and affirmed the ALJ's Decision and Order, holding that the ALJ properly applied the regulatory standards in evaluating the PFTs and adequately explained his weighing of the competing medical opinions. *Vanderpool v. Clinchfield Coal Co.*, BRB No. 22-0355, slip op. at 7–8 (U.S. Dep't of Lab., Ben. Rev. Bd. Apr. 28, 2023).

Clinchfield timely petitioned this Court for review.

### B.

The Black Lung Benefits Act aims "to provide benefits . . . to coal miners who are totally disabled due to pneumoconiosis[.]" 30 U.S.C. § 901(a). Pneumoconiosis, commonly known as black lung disease, is "a chronic dust disease of the lung and its

4

sequelae, including respiratory and pulmonary impairments, arising out of coal mine employment." *Id.* § 902(b).

To obtain benefits under the Act, a claimant ordinarily must prove by a preponderance that (1) he has black lung disease in either its clinical or legal form; (2) the black lung disease arose out of coal mine employment; (3) he is totally disabled by a pulmonary or respiratory impairment; and (4) his black lung disease is a substantially contributing cause of that total disability. *W. Va. CWP Fund v. Bender*, 782 F.3d 129, 133 (4th Cir. 2015); 20 C.F.R. §§ 725.202(d)(2), 718.204(c)(1).

Alternatively, the Act also offers two statutory presumptions that, if invoked, alter the claimant's burden of proof on some or all elements in the four-part default rule above. *See* 30 U.S.C. § 921(c)(3), (4); 20 C.F.R. §§ 718.304, 718.305. For one, if a claimant establishes complicated pneumoconiosis, he is entitled to an irrebuttable presumption of total disability caused by black lung disease under 30 U.S.C. § 921(c)(3). *See also* 20 C.F.R. § 718.304. The parties agree that Mr. Vanderpool cannot satisfy the elements required to invoke the § 921(c)(3) presumption.

If the claimant cannot invoke the § 921(c)(3) irrebuttable presumption, he may instead invoke the rebuttable fifteen-year presumption in § 921(c)(4). *See* 20 C.F.R. § 718.305. Under that provision, a miner who (1) has at least fifteen years of qualifying coal mine employment and (2) establishes a totally disabling respiratory or pulmonary impairment is presumed to be totally disabled due to black lung disease. 30 U.S.C. § 921(c)(4); 20 C.F.R. § 718.305(b)(1); *Bender*, 782 F.3d at 133–35. If invoked, the presumption supplies the remaining elements of entitlement, subject to the employer's

5

rebuttal. Thereafter, the burden shifts to the employer to rebut by proving either that the miner has neither clinical nor legal pneumoconiosis, or that "no part of the miner's respiratory or pulmonary total disability was caused by" black lung disease. 20 C.F.R. § 718.305(d)(1); *Bender*, 782 F.3d at 133–35.

Here, Clinchfield does not separately contest the ALJ's rebuttal findings. Its only challenge is to the ALJ's finding that Mr. Vanderpool established total disability under 20 C.F.R. § 718.204(b)(2) as an initial matter, which permitted invocation of the § 921(c)(4) presumption.

## II.

When reviewing a Benefits Review Board order under the Black Lung Benefits Act, we apply the same standard the Board applies, reviewing the ALJ's findings to determine whether they are supported by substantial evidence and in accordance with the law. *Am. Energy, LLC v. Dir., OWCP*, 106 F.4th 319, 330 (4th Cir. 2024). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Consol. Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). We will not disturb an ALJ's factual finding, "even if we disagree with it," so long as it is supported by substantial evidence. *Id.* (internal citation omitted).

In applying this deferential standard, we consider whether the ALJ analyzed all the relevant evidence and sufficiently explained his rationale in crediting certain evidence. *Extra Energy Inc. v. Lawson*, 140 F.4th 138, 146 (4th Cir. 2025); *Hobet Mining, LLC v. Epling*, 783 F.3d 498, 504 (4th Cir. 2015). The Administrative Procedure Act, 5 U.S.C. § 557(c)(3)(A), does

6

not require the ALJ to discuss every piece of evidence; the duty of explanation is satisfied so long as the ALJ makes clear "what he did and why he did it." *Am. Energy*, 106 F.4th at 332 n.6 (quoting *Lane Hollow Coal Co. v. Dir., OWCP*, 137 F.3d 799, 803 (4th Cir. 1998)).

We review legal conclusions de novo, but we do not reweigh conflicting evidence, make credibility determinations, or substitute our judgment for the ALJ's, particularly in a "battle of the experts" over medical opinion evidence. *Extra Energy*, 140 F.4th at 146–47; *Mingo Logan Coal Co. v. Owens*, 724 F.3d 550, 557 (4th Cir. 2013) (explaining that the ALJ, as factfinder, "is charged with making factual findings, including evaluating the credibility of witnesses and weighing contradicting evidence." (quoting *Doss v. Dir., Off. of Workers' Comp. Programs*, 53 F.3d 654, 658 (4th Cir. 1995))).

## III.

The issue before us is whether substantial evidence supports the ALJ's predicate finding that Mr. Vanderpool established a totally disabling respiratory or pulmonary impairment under 20 C.F.R. § 718.204(b)(2), which in turn permitted invocation of the § 921(c)(4) presumption. Clinchfield contends it does not for two reasons. First, it argues the ALJ misapplied the regulatory standards governing pulmonary function tests by treating Appendix B's "maximal effort" criteria as guidance rather than rigid validity requirements. *See* 20 C.F.R. pt. 718, app. B. Second, Clinchfield argues the ALJ failed to adequately evaluate and explain his treatment of the medical opinion evidence as required by the Administrative Procedure Act.

7

We address each argument in turn. Upon applying deferential review to the ALJ's order, we agree with the Board's decision to affirm the ALJ's order on these issues.

## A.

We first consider Clinchfield's challenge to the ALJ's evaluation of the PFT evidence. Section 718.204(b)(2) of the governing regulation permits a claimant to establish total disability through several forms of evidence, including qualifying PFTs. The ALJ here relied principally on the October 29, 2014 and February 23, 2018 PFTs to find total disability for Mr. Vanderpool.

Clinchfield does not dispute that the October 2014 and February 2018 PFTs yielded qualifying values under § 718.204(b)(2)(i). Pet'r Br. 7. Instead, Clinchfield argues that the ALJ was required to treat both studies as invalid because (a) Mr. Vanderpool's claim-developed PFT from October 2014 that was sponsored by the U.S. Department of Labor reflected an exhalation time marginally below seven seconds, which Clinchfield contends necessarily fails the Appendix B criteria absent strict "maximal effort" compliance; and (b) the February 2018 PFT separately conducted in the course of Mr. Vanderpool's medical treatment was evaluated for "sufficient reliability" rather than for substantial compliance with the Appendix B "maximal effort" framework. Pet'r Br. 7–8.

As an initial matter, Clinchfield's notion that any deviation from Appendix B categorically invalidates a PFT, and thus any opinion relying on it, is inconsistent with the regulations. Part 718 of the regulation provides that "[i]f it is established that one or more [quality] standards have not been met, the claims adjudicator may consider such fact in determining the evidentiary weight to be given to the results." 20 C.F.R. pt. 718 app. B

8

(introduction). It follows that the extent of a PFT's compliance with regulatory quality standards goes to the weight of the evidence, a matter we have established is committed to the discretion of the ALJ. *Extra Energy*, 140 F.4th at 147; *accord S. Ohio Coal Co. v. Dir. OWCP*, 128 F.4th 809, 818 (6th Cir. 2025) ("A PFT's noncompliance with regulatory quality standards thus goes to the weight of the evidence, a matter committed to the discretion of the ALJ.").

On the topic of weighing medical opinion evidence, this Court has recognized that an ALJ has discretion to credit the expert whose reasoning accords with the medical and scientific premises reflected in the Department of Labor's 2000 regulatory preamble, including the preamble's guidance that the quality standards in Appendix B are not a rigid checklist. *See Extra Energy*, 140 F.4th at 147; 65 Fed. Reg. 79920, 79928 (Dec. 20, 2000). "While the preamble is nonbinding guidance[,] . . . we have said that [it] is entirely consistent with the [Black Lung Benefits] Act and its regulations." *Extra Energy*, 140 F.4th at 147 (internal quotations omitted). Because the preamble "explains the scientific and medical basis" for Part 718 of the regulations, *Harman Min. Co. v. Dir., OWCP*, 678 F.3d 305, 315 n.4 (4th Cir. 2012), and "provides guidance for the four elements of black lung benefits claims," *Am. Energy*, 106 F.4th at 326, an ALJ is permitted to give "little weight . . . to medical findings that conflict with the [Black Lung Benefits Act]'s implementing regulations." *Westmoreland Coal Co. v. Stallard*, 876 F.3d 663, 671 (4th Cir. 2017) (internal quotations omitted).

Viewed through these lenses, Clinchfield's arguments rest on a false equivalence: contrary to Clinchfield's assertions, claim-developed pulmonary studies are evaluated for substantial compliance with the Part 718 quality standards, while pulmonary studies conducted

9

in the course of medical treatment are weighed for reliability, and the ALJ adequately explained his conclusions under both frameworks. *Compare* 20 C.F.R. §§ 718.101(b), 718.103(c) (requiring claim-developed PFTs be evaluated for "substantial compliance" with the attached Appendix B quality standards found at 20 C.F.R. pt. 718, app. B), *with* Regulations Implementing the Federal Coal Mine Health and Safety Act of 1969, as Amended, 65 Fed. Reg. at 79920, 79928 ("reliability" requirement for categories where standards are inapplicable, such as treatment-record PFTs that are not conducted in connection with a benefits claim), *and J.V.S* [*Stowers*] *v. Arch of W. Va.*, 24 B.L.R. 1-78, 1-89, 1-92 (Ben. Rev. Bd. 2008) ("reliability" approach used for treatment-record medical testing); *see also Extra Energy*, 140 F.4th at 147 ("at bottom, '[i]t is the role of the ALJ—not the appellate court—to resolve' a 'battle of the experts.' *Cochran*, 718 F.3d at 324 (citing *Harman*, 678 F.3d at 310). 'Therefore, we will not disrupt the ALJ's decision to credit the opinion of one expert over another.' *Bender*, 782 F.3d at 145.").

Below, we delineate these distinct standards governing claim-developed PFTs and PFTs conducted in the course of medical treatment, and we apply those standards to the October 2014 and February 2018 pulmonary studies Clinchfield challenges. As we will explain, substantial evidence supports the ALJ's determination that the October 2014 claim-developed PFT substantially complied with the applicable quality standards and that the February 2018 treatment-record PFT was sufficiently reliable to support the total disability finding under § 718.204(b)(2). *Extra Energy*, 140 F.4th at 146–47 (discussing that an ALJ has discretion to weigh medical opinion evidence). Thus, because the ALJ

10

here properly applied the governing regulations and his reasoning accords with applicable law, we reject Clinchfield's arguments.

1.

In evaluating the probative value of a PFT study, the governing regulations distinguish between PFTs that are developed in connection with a benefits claim and PFTs obtained in the course of medical treatment.

For a claim-developed PFT, Part 718's quality standards apply, but the regulations expressly provide that a test need only be "in substantial compliance with the applicable standard" to constitute evidence of the fact for which it is offered. 20 C.F.R. § 718.101(b). Appendix B identifies these applicable quality standard criteria bearing on acceptability, including that a claimant's effort may be judged unacceptable if the claimant has not used maximal effort during the forced expiration or has not continued expiration for at least seven seconds (or until an obvious plateau occurs). 20 C.F.R. pt. 718, app. B (2)(ii)(G). But the regulation's preamble cautions against using Appendix B as an unduly rigid checklist. 65 Fed. Reg. at 79920, 79928. It explains that the "substantial compliance" standard is "a rule of reason," and directs the factfinder to identify the deviation from the Appendix B quality standard and then "determine whether the [PFT] is reliable" for the dispute for which it is relevant, "despite its failure to comply with every criterion in the standard." *Id.*; *see also Keener v. Peerless Eagle Coal Co.*, 23 B.L.R. 1-229 (Ben. Rev. Bd. en banc 2007) (holding that tests are admissible if in substantial compliance, even where minor deviations exist).

11

By contrast, when a PFT is conducted in the course of medical treatment, the Part 718 quality standards do not apply in the same manner; the adjudicator need only be persuaded that the study is "*sufficiently reliable* to establish the fact(s) for which it is offered." 65 Fed. Reg. at 79920, 79928 ("The Department noted that § 718.101 limits the applicability of the [Appendix B] quality standards to evidence 'developed . . . in connection with a claim for benefits' governed by 20 CFR part[] 718 . . . Despite the inapplicability of standards to certain categories of evidence, *the adjudicator still must be persuaded that the evidence is reliable* in order for it to form the basis for a finding of fact on an entitlement issue.") (emphasis added). In assessing reliability, the ALJ considers the medical opinions addressing the study's validity. *Robinette v. Dir., OWCP*, 9 B.L.R. 1-154 (Ben. Rev. Bd. 1986); *Casella v. Kaiser Steel Corp.*, 9 B.L.R. 1-131 (Ben. Rev. Bd. 1986).

2.

The October 2014 PFT was administered in connection with Mr. Vanderpool's claim as part of a DOL-sponsored pulmonary evaluation performed by Dr. Esther Ajjarapu. The ALJ therefore evaluated that study under the Part 718 quality standards and found it in substantial compliance with Appendix B, rendering it probative evidence of total disability.

Clinchfield challenges that determination on the grounds that Mr. Vanderpool's forced expiration time was under seven seconds, even if the shortfall was marginal. Dr. Ajjarapu acknowledged in a supplemental report that the test was not performed for the "requisite 7 seconds," but explained that Mr. Vanderpool came "very close," maintained

his effort beyond six seconds, produced reproducible tracings with three valid curves, and that Dr. Mohammed Ranavaya, the DOL consultant, had considered the test valid. J.A. 412–13. The ALJ credited that explanation and found it reasonable to infer that in Dr. Ajjarapu's medical opinion, the study was in substantial compliance with the applicable quality standards in Appendix B.

The record also supports the ALJ's reliance on the DOL validation process. After the test was administered, the results were forwarded to Dr. Ranavaya for independent review, and he marked the ventilatory tracings "acceptable." J.A. 349. And when Clinchfield's medical experts later criticized the study as invalid based on Mr. Vanderpool's marginally shortened exhalation time and supposed lack of maximal effort, Dr. Ajjarapu responded that seven seconds was not achievable for Mr. Vanderpool, explaining that his exhalation time was "very close to 7 seconds" and "that was what [Mr. Vanderpool] was able to do." J.A. 413. She also noted the fact that the study otherwise satisfied key indicators of validity, including reproducibility and multiple acceptable curves. *Id.* Indeed, the regulations do not categorically invalidate a claim-developed medical test because of a marginal deviation from Appendix B alone; instead, the deviation is a factor the adjudicator may consider in assigning evidentiary weight. *See* 20 C.F.R. pt. 718, app. B; 65 Fed. Reg. at 79920, 79928. In that regard, the ALJ permissibly treated Clinchfield's contrary opinions as advocating a more rigid validity threshold than the regulatory scheme demands for claim-developed studies.

13

Thus, on this record, substantial evidence supports the ALJ's determination that the October 2014 PFT was admissible and probative notwithstanding the marginal deviation in exhalation time.

3.

Likewise, substantial evidence supports the ALJ's determination that the February 2018 PFT was reliable.

The February 2018 PFT, in contrast to the October 2014 PFT, was conducted in the course of Mr. Vanderpool's medical treatment.  The ALJ therefore did not apply the Part 718 quality standards as strict validity prerequisites or using the "substantially compliant" framework applied to the October 2014 PFT; instead, consistent with the preamble and the regulatory distinction reflected in the ALJ's discussion, he permissibly assessed whether the study was "sufficiently reliable" to support the total disability finding.  *See supra* Section III.A (preamble; weighing medical evidence) and Section III.A.2 (treatment-record PFTs); 65 Fed. Reg. at 79928; *J.V.S* [*Stowers*], 24 B.L.R. at 1-92.

Clinchfield's experts again asserted that the study was invalid, citing the lack of a plateau and insufficient or interrupted expiration.  The ALJ considered those opinions but again found that they effectively imported a rigid "maximal effort" approach inconsistent with the reliability inquiry applicable to a treatment-record PFT.  The ALJ contrasted those views with Dr. Ajjarapu's assessment that Mr. Vanderpool's effort was "good" and "adequate," with "results sufficiently reliable," and he also noted that even one of Clinchfield's reviewing physicians acknowledged cooperative effort during testing despite the results falling marginally short of the Appendix B standards.  *Vanderpool*, No. 2017-

14

BLA-05067, slip op. at 18–19; J.A. 56–57, 115.  On that basis, the ALJ permissibly found the February 2018 study sufficiently reliable to support a total disability determination in accordance with § 718.204(b)(2).

B.

Clinchfield next argues that the ALJ violated the Administrative Procedure Act ("APA") by failing to critically evaluate the medical opinion evidence that did not support a finding of total disability, particularly when he credited Dr. Ajjarapu and discounted the contrary opinions of Dr. Gregory Fino, Dr. Jeffrey Sargent, and Dr. Joseph Renn.  We disagree.  The record shows the ALJ identified the relevant evidence, resolved the material conflicts, and adequately explained why he credited some opinions over others.

The APA requires an ALJ to include "a statement of findings and conclusions, and the reasons or basis therefor, on all the material issues" presented.  5 U.S.C. § 557(c)(3)(A). Consistent with that requirement, an ALJ must analyze the relevant evidence, resolve material conflicts, and articulate a rationale sufficient to permit meaningful judicial review. *See Harman*, 678 F.3d at 316; *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).  But the APA does not demand that the ALJ discuss every piece of evidence so long as he makes clear what he did and why he did it.  *Am. Energy*, 106 F.4th at 332 n.6 (quoting *Lane Hollow*, 137 F.3d at 803).

That standard is met here.  The ALJ first summarized the objective testing and the competing medical opinions addressing total disability, including the October 2014 and February 2018 PFTs and the physicians' corresponding validation and narrative reports interpreting those studies.  He then made threshold findings about the probative value of

15

those studies under the governing regulations, explaining why the October 2014 claim-developed study substantially complied with Appendix B and why the February 2018 treatment-record study could be considered sufficiently reliable. Having explained why he treated both studies as probative, the ALJ then addressed how the physicians' medical opinions depended on their respective competing views of those studies' validity and reliability.

On that score, the ALJ explained why he assigned reduced weight to the medical opinions of Dr. Fino and Dr. Sargent. In the ALJ's view, those opinions discounted the October 2014 and February 2018 studies based on a stricter validity approach than the regulatory framework required in the circumstances, and they did not persuasively account for the DOL's validation evidence or the reproducibility and acceptability features the ALJ found significant. For similar reasons, the ALJ explained why Dr. Renn's criticism did not overcome those considerations.

By contrast, the ALJ credited Dr. Ajjarapu's opinion because she examined Mr. Vanderpool, administered and interpreted both studies at issue, directly addressed the quality concerns raised by Clinchfield's experts, and provided a reasoned narrative connecting the objective testing and clinical observations to her disability conclusion. The ALJ explained that this reasoning aligned with the DOL validation process and with Dr. Ranavaya's independent assessment of the claim-developed study. That explanation provides a rational basis for the ALJ's weighing of the medical opinions and permits meaningful review. *Extra Energy*, 140 F.4th at 147 ("'[A]s trier of fact, the ALJ is not bound to accept the opinion or theory of any medical expert,' but instead 'must evaluate

16

the evidence, weigh it, and draw his own conclusions.' *Bender*, 782 F.3d at 144." (internal citations omitted)) (also explaining that it is reasonable for an ALJ to give greater weight to the testimony of the medical expert whose opinion was supported by the prevailing view of the medical and scientific community as reflected in the regulation's preamble); *accord S. Ohio Coal Co.*, 128 F.4th at 818.

Clinchfield's argument does not identify an APA failure as much as it furnishes a request that we revisit the ALJ's weighing of competing expert views. Where, as here, the ALJ acknowledges the contrary opinions, explains why he finds them less persuasive, and grounds that assessment in the record and the applicable regulatory framework, the APA is satisfied even if Clinchfield weighs the evidence differently. *See Harman*, 678 F.3d at 316; *Akers*, 131 F.3d at 441–42. The Board agreed, concluding that the ALJ adequately explained his rationale for crediting Dr. Ajjarapu's medical opinion and assigning less weight to Drs. Fino's, Sargent's, and Renn's medical opinions. Accordingly, Clinchfield has not shown that the ALJ failed to evaluate the contrary medical opinion evidence or failed to explain his reasoning. Without first crossing this hurdle, we cannot begin to re-weigh the evidence on the record.

We therefore reject Clinchfield's APA challenge to the ALJ's weighing of the medical opinion evidence.

## IV.

For the foregoing reasons, we agree with the Board that the ALJ's findings are supported by substantial evidence and consistent with applicable law. The Board therefore

17

did not err in affirming the ALJ's Decision and Order awarding benefits to Mr. Vanderpool.

Accordingly, Clinchfield's petition for review is

*DENIED.*